Filed 5/20/13  P. v. Ramirez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>PRISCILLA RAMIREZ,<br><br>    Defendant and Appellant. | C069744<br><br>(Super. Ct. No. 09F05757) |

After a court trial, the trial court found defendant Priscilla Ramirez guilty of two counts of second degree murder, found she was a principal, and found another principal was armed with a firearm during the murders.  (Pen. Code, §§ 187, 12022, subd. (a)(1).)  The trial court sentenced defendant to state prison for 16 years to life.

On appeal, defendant attacks the stipulation by which she agreed evidence from the jury trial of former codefendants could be admitted--along with other evidence--at her

court trial.[1]  Alternatively, she contends her trial counsel incompetently represented her regarding her entry into that stipulation.  We shall affirm the judgment.

## PROCEDURAL BACKGROUND[2]

On July 21, 2009, Deshawn Holloway was found with two gunshot wounds to his back and Everett Taylor was found with three gunshot wounds, one to the back of his head; both men died.  The People's theory was that former codefendant Armstrong was the shooter, former codefendant Gonzales was the driver, and both men were incited to kill by defendant's false claim that Taylor had raped her.

On December 15, 2009, at the preliminary hearing, defendant stipulated that she had been advised of her rights.  All three defendants were held to answer on two counts of first degree murder plus a multiple-murder special circumstance and firearm enhancements.  Three juries were anticipated, because of pretrial statements each defendant had made.  (See fn. 3, *post*.)

On February 2, 2011, the People filed a trial brief containing an extremely detailed factual recitation, supported by citations to pages of discovery and to the preliminary hearing transcript.  A proposed witness list, linking each witness to the expected area of testimony, and detailing the estimated time for the case-in-chief, was attached.  Also attached were over 400 pages of transcripts of statements, proposed jury questions, and proposed jury instructions.

On February 18, 2011, defendant's trial counsel and the People placed on the record an agreement whereby defendant's case would be severed and she would waive her right to a jury trial.  Defendant agreed to this procedure, confirming that she had had

---

[1]  The appeal of former codefendants Michael Lee Armstrong and Phillip Perez Gonzales is separately pending.  (See *People v. Armstrong & Gonzales*, 3 Crim. No. C068330.)

[2]  We need not detail the evidence presented during the trials in order to resolve the issues on appeal.

a chance to "fully discuss" the issue and receive advice from her counsel, and that it was her decision to waive jury trial. She waived her right to jury trial in open court, as did the People. The trial court granted severance and directed the parties to prepare a written version of the agreement.

The undated written stipulation signed by counsel provided as follows:

"1. Priscilla Ramirez will waive her right to a jury trial, and agree to have her matter adjudicated as a court trial;

"2. The Hon. Steve White will be the finder of fact for the court trial;

"3. Priscilla Ramirez will waive her speedy trial rights . . . so that the jury trial in the case of *People v. Armstrong & Gonzales* . . . will proceed first;

"4. The Hon. Steve White may consider all evidence adduced during the jury trial in the case of *People v. Armstrong & Gonzales* . . . in rendering his verdict . . . except for that evidence barred under the *Aranda-Bruton*[3] rule;

"5. Either party during the court trial . . . may recall any witness who testified during the jury trial . . . if they wish to do so, with the caveat that--if either co-defendant *Armstrong* or *Gonzales* testifies during the jury trial--they cannot be compelled to testify in the court trial;

"6. Either party . . . may call any other witness during the court trial if they wish to do so."

As anticipated, Judge White presided over the jury trial, and on April 15, 2011, separate juries found Armstrong and Gonzales each guilty of two counts of second degree murder and found various firearm enhancements true.

On May 9, 2011, defendant's court trial on the amended information began with formal entry of the stipulation, to which defendant lodged no objection. Six prosecution

_____

3 Very generally speaking, the *Aranda-Bruton* rule bars the admission of an out-of-court statement of one defendant that also incriminates a *jointly-tried* defendant. (*People v. Brown* (2003) 31 Cal.4th 518, 537; see *People v. Aranda* (1965) 63 Cal.2d 518; *Bruton v. United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476].)

witnesses testified at the court trial, four of them were cross-examined, and both parties rested that day

On May 27, 2011, the trial court heard arguments. The defendant (through counsel) argued she was drunk and upset about her relationship with victim Taylor, but had no intent to cause his death, or even cause physical harm, but wanted "closure" and "wanted a message to get to" Taylor that they were breaking up and he needed to leave her alone; further, victim Holloway was unknown to her; finally, Armstrong was a "loose cannon" and his independent act of shooting the two victims surprised defendant; therefore, the killings were not the natural and probable consequence of defendant's actions

On June 3, 2011, the trial court found defendant guilty of two counts of second degree murder, and found the firearm enhancement true as to each count.

On July 1, 2011, the trial court sentenced defendant to 15 years to life in state prison on each murder count, and added a year for the firearm enhancement as to each count, ordering the sentences for the two counts to run concurrently.[4]

Although defendant moved to recall her sentence, she did not file a timely notice of appeal. However, we granted her relief, based on her claim that she relied on trial counsel to file a timely notice.

## DISCUSSION

### I

### *Validity of the Stipulation*

On appeal, defendant characterizes the evidentiary stipulation as a "waiver" of her rights, and contends that waiver is invalid because she was not adequately advised of the

_____

[4] At sentencing, the trial court found that although defendant's lie about the rape caused the murders, and she was present during the murders, she was not as directly involved as the shooter and driver, she was youthful (age 21) and she had no record.

4

right to confront witnesses and to be present during testimony, and did not waive her right to counsel at a "critical" stage of the proceeding. She also attacks certain evidence introduced at the jury trial on the ground it was hearsay. We find no prejudicial error.

### A. *Juror Unanimity*

We first reject defendant's passing claim that the jury waiver was invalid because she was not told of the need for juror unanimity. (Cf. *People v. Diaz* (1992) 3 Cal.4th 495, 570-571.) That is not a required advisement, although it may be a good practice to so advise defendants (see *United States ex rel. Wandick v. Chrans* (7th Cir.1989) 869 F.2d 1084, 1087-1089). But where a defendant is represented by counsel, she need not be instructed about "'all the ins and outs' of a jury trial" (*People v. Wrest* (1992) 3 Cal.4th 1088, 1104-1105; see *People v. Acosta* (1971) 18 Cal.App.3d 895, 901-902 (*Acosta*)); or even that a jury trial requires a unanimous verdict (see *People v. Tijerina* (1969) 1 Cal.3d 41, 45-46).

Here, defendant agreed she had had time to "fully discuss" the waiver with counsel, and the trial court could properly infer the relevant "ins and outs" were explained to her by counsel. (See *Acosta*, *supra*, 18 Cal.App.3d at pp. 901-902; *People v. Evanson* (1968) 265 Cal.App.2d 698, 700-701; see also *In re Tahl* (1969) 1 Cal. 3d 122, 129 (*Tahl*) ["If an accused has counsel, courts have generally assumed, in the absence of evidence to the contrary, counsel will perform his duty as an advocate and an officer of the court to inform the accused of and take steps to protect the other rights afforded by the law"].) We see no error in this particular omission.

### B. *Slow Plea of Guilty*

In what we perceive to be defendant's principal contention on appeal, she argues that the trial court did not properly advise her before accepting her partial submission through stipulation. She argues that the "overall submission in this case" was the

equivalent of a "slow plea of guilty" and emphasizes the *Boykin-Tahl-Bunnell*[5] line of cases, which our Supreme Court has outlined as follows:

> "In *Boykin*, *supra*, 395 U.S. 238, the United States Supreme Court held that '[i]t was error . . . for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary.' [Citation.] . . .

> "In *Tahl*, *supra*, 1 Cal. 3d 122, this court held that in order to comply with the requirements of *Boykin*, in all cases in which the trial court accepts a guilty plea: '[T]he record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant.' (*Id*. at p. 132, italics in the original.)

> "In *Bunnell*, *supra*, 13 Cal. 3d 592, we elaborated: 'In all guilty plea and submission cases the defendant shall be advised of the direct consequences of the conviction such as the permissible range of punishment provided by statute . . . .' (*Id*. at p. 605.) Although we recognized in *Bunnell* that the *Boykin-Tahl* advisements might not be constitutionally required in all circumstances, we concluded that in the interest of justice it was appropriate to adopt a judicially declared rule of criminal procedure, requiring the giving of certain advisements in a broad category of cases.

> "In subsequent decisions, we have clarified that '[u]nlike the admonition of constitutional rights, . . . advisement as to the consequences of a plea is not constitutionally mandated. Rather, the rule compelling such advisement is "a judicially declared rule of criminal procedure."'" (*People v. Barella* (1999) 20 Cal.4th 261, 266.)

Whether or not a particular submission is "tantamount to a plea of guilty," a defendant must be advised of the right to a jury trial, the right of confrontation, and the privilege against self-incrimination, to ensure any waiver is knowing and voluntary, and ensure the record is clear about what, exactly, the parties intend. (See *People v. Wright* (1987) 43 Cal.3d 487, 494-495 (*Wright*); *Bunnell*, *supra*, 13 Cal.3d at pp. 604-606.) We

_____

5  See *Boykin v. Alabama* (1969) 395 U.S. 238 [23 L. Ed. 2d 274]; *Tahl*, *supra*, 1 Cal.3d 122; *Bunnell v. Superior Court* (1975) 13 Cal.3d 592 (*Bunnell*).

will assume that the trial court should have advised defendant of all three of these specific rights, under the prophylactic rule announced in *Bunnell* and reiterated in later cases.

However, unless the submission is "tantamount to a plea of guilty," any error is reviewed for prejudice under state law standards. (*Wright*, *supra*, 43 Cal.3d at p. 495; see *People v. Watson* (1956) 46 Cal.2d 818, 836-837.) In some cases, it may be difficult to determine the nature of the submission:

> "Perhaps the clearest example of a slow plea is a bargained-for submission on the transcript of a preliminary hearing in which the only evidence is the victim's credible testimony, and the defendant does not testify and counsel presents no evidence or argument on defendant's behalf. Such a submission is 'tantamount to a plea of guilty' because 'the guilt of the defendant [is] apparent on the basis of the evidence presented at the preliminary hearing and . . . conviction [is] a foregone conclusion if no defense [is] offered.' [Citations.]

> "Submissions that are not considered slow pleas include those in which (1) the preliminary hearing involves substantial cross-examination of the prosecution witnesses and the presentation of defense evidence or (2) the facts revealed at the preliminary examination are essentially undisputed but counsel makes an argument to the court as to the legal significance to be accorded them. [Citation.]

> "The wide variety of submissions that fall between these extremes, however, present troublesome classification problems. When the defendant reserves the right to testify or offer evidence and the record shows no sign of negotiations between defendant and prosecution, the submission may or may not be a slow plea. Some defendants submit their cases on the transcript simply to achieve the effect of a guilty plea without actually having to admit guilt in open court and on the record. Others submit not to contest guilt but to avoid expensive or burdensome trials or to impress upon the trial judge the mitigating factors for sentencing. Some defendants appear to concede guilt as to one or more of the offenses but contest it as to others.

> "An appellate court, in determining whether a submission is a slow plea, must assess the circumstances of the entire proceeding. It is not enough for a reviewing court to simply count the number of witnesses who testified at the hearing following the submission. A submission that prospectively appeared to be a slow plea may turn out to be part of a full-blown trial if counsel contested the sufficiency of evidence for those counts or presented another potentially

7

meritorious legal argument against conviction. Conversely, a submission that did not appear to be a slow plea because the defendant reserved the right to testify and call witnesses or to argue the sufficiency of the evidence [citation] may turn out to be a slow plea if the defense presented no evidence or argument contesting guilt.

"If it appears on the whole that the defendant advanced a substantial defense, the submission cannot be considered to be tantamount to a plea of guilty. Sometimes, a defendant's best defense is weak. He may make a tactical decision to concede guilt as to one or more of several counts as part of an overall defense strategy. A submission under these circumstances is not a slow plea, and the trial court is not constitutionally compelled by *Boykin* and *Tahl* to administer the guilty-plea safeguards to assure that the tactical decision is voluntary and intelligent. The advisements and waivers in such a case are required only as a matter of the judicial policies that underlie our decision in *Bunnell*." (*Wright*, *supra*, 43 Cal.3d at pp. 496-497; see *People v. Sanchez* (1995) 12 Cal.4th 1, 27-29 (*Sanchez*), overruled on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Measured by these standards, the stipulation in this case was not a "slow plea." Both parties were free to introduce additional evidence at the court trial, and defendant (through counsel) cross-examined some of the People's witnesses at the court trial. Because defendant reserved the right to confront witnesses, "counsel's choice ultimately to exercise defendant's right of confrontation in only a limited manner was not a 'submission,' but rather, was no more than a tactical decision within counsel's discretion to make." (*People v. Robertson* (1989) 48 Cal.3d 18, 40 (*Robertson*).) Further, defense counsel made a valiant *and partially successful* argument, obtaining two second degree murder convictions in the face of evidence defendant instigated Taylor's murder. (See *Sanchez*, *supra*, 12 Cal.4th at pp. 29-30 [no slow plea where trial counsel cross-examined witnesses and "argued constantly that the facts as presented at the preliminary hearing should be viewed as not supporting first degree murder convictions"]; *People v. Stone*

(1994) 27 Cal.App.4th 276, 282-283.)  In short, because there was no understanding that the stipulation would result in guilt findings, this was not a "slow plea" case.[6]

Defendant suggests this case should be treated like a slow plea for three reasons, all based on the theory that trial counsel did not adequately contest her guilt, claiming (1) the jury trial evidence was "unknown[,]" and (2) it was "completely unconfronted because neither appellant nor her attorney attended the trial[,]" and (3) defense counsel argued only that she lacked the intent to kill.  We reject each point.

As for the first point, the jury trial evidence was not "unknown" because the People had filed a detailed trial brief outlining the evidence with reference to discovery pages and preliminary hearing transcript pages.  If the actual jury trial revealed anything materially different, defendant has failed to bring it to our attention on appeal.

As for the second point, the People note the record on appeal does not reveal whether or not defendant's trial counsel attended the jury trial, and even if he did not, the evidence was not "unconfronted" as defendant states.  Every witness at the jury trial was cross-examined by one or both counsel for the codefendants, which allowed the trial court to observe their credibility, but more importantly, as stated earlier, defendant (through counsel) retained the right to call any of those witnesses to testify at the court trial and thereby confront them:  The fact that right was not fully exercised did not impair the defendant's *opportunity* to confront all witnesses.  (See *Robertson*, *supra*, 48 Cal.3d at pp. 39-40.)

Finally, as to the third point, defendant's description of the closing argument is incomplete.  Trial counsel argued defendant had not wanted *any* harm to come to Taylor, did not know Holloway, and the shootings were not the natural and probable consequence of her actions, but were the surprising and independent actions of Armstrong, a "loose

_____

**6** Because defendant did not testify, "there was no requirement of a personal, on-the-record waiver" of her privilege against self-incrimination.  (*Sanchez, supra*, 12 Cal.4th at p. 30; cf. *People v. Phillips* (1985) 172 Cal.App.3d 670, 673.)

9

cannon[.]" On appeal, defendant provides no suggestions about what *additional* arguments trial counsel plausibly could have made in this case.

Separately, contrary to defendant's view, the stipulation did not impair her right to be present at trial and her right to assistance of counsel at trial. She was present with counsel for her entire court trial. Because her case had been severed, she was *not a party* to the jury trial, and had no right to appear with counsel there.

Accordingly, because this was not a "slow plea" case, any error was subject to state law harmless error analysis. (See *Robertson*, *supra*, 48 Cal.3d at pp. 41-42; *Wright*, *supra*, 43 Cal.3d at p. 495; *People v. Huynh* (1991) 229 Cal.App.3d 1067, 1079-1080.) Defendant has not shown there is any reasonable probability that she would have obtained a better result in the absence of her entry into the stipulation, therefore any error by the trial court in accepting the stipulation absent full compliance with the prophylactic *Bunnell* advisements was harmless.

*C.      Hearsay*

Finally, we observe that defendant describes certain purported hearsay evidence admitted at the jury trial. However, she makes no effort to analyze whether the third party statements were actually hearsay, that is, whether they were offered for the truth of the matter asserted; nor does she address potentially applicable exceptions to the rule precluding consideration of hearsay. She further fails to describe how any hearsay evidence introduced at the jury trial was prejudicial to her case. She concedes no evidence from the jury trial violating the *Aranda-Bruton* rule was used against her. She asserts the evidence violated due process simply because her stipulation was invalid, a contention we have already rejected. We will not presume, in the absence of coherent briefing, that the challenged statements were inadmissible, let alone prejudicial. (See *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2 (*Freeman*).)

Defendant also claims that the *arguments* made at the jury trial of her codefendants prejudiced her. But arguments are not evidence (see *Beagle v. Vasold*

10

(1966) 65 Cal.2d 166, 176; *Estate of Pittman* (1980) 104 Cal.App.3d 288, 295), and because the stipulation did not permit the trial court to consider the *arguments* at the jury trial, only *evidence*, we presume the trial court disregarded the arguments. (See *People v. Coddington* (2000) 23 Cal.4th 529, 644.)

II

*Incompetence of Counsel*

Defendant contends trial counsel was incompetent by (1) permitting the introduction of "unknown" evidence from the jury trial against her, (2) failing to advise her of her constitutional rights, (3) failing to be present at the jury trial, and (4) failing to interpose certain hearsay objections to testimony taken at the court trial.

To prevail on a claim of incompetent counsel, defendant must show her counsel breached standards of professional competence *and* there is a reasonable probability she would have obtained a more favorable result in the absence of counsel's failings; further, "If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,'" her claim of incompetence of counsel "must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.'" (*People v. Ledesma* (2006) 39 Cal.4th 641, 745-746.)

We first observe that trial counsel's strategy was generally *successful*, in that he avoided exposing his client to a joint jury trial with the trigger-man and his driver, obtained second degree murder verdicts for his client despite plausible evidence of first degree murder, based on defendant's act of inciting others to kill Taylor, and even persuaded the trial court to impose concurrent sentences. In particular, we reject defendant's four sub-claims of incompetence as follows:

(1) Although defendant argues that trial counsel was ignorant of the evidence to be presented at the jury trial, we disagree for the reason already stated in Part I, *ante*: Based on the preliminary hearing transcript, the extensive discovery, and the People's unusually detailed trial brief, trial counsel was informed of the evidence expected to be

11

introduced. Defendant fails to argue that there was any deviation from the People's detailed roadmap of the case at the jury trial.

(2) The record does not show what advice trial counsel gave defendant before she entered into the stipulation. Absent anything in the record to the contrary, we must presume defense counsel adequately advised defendant. (See *Robertson*, *supra*, 48 Cal.3d at p. 36; *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 373.)

(3) As we noted *ante*, the record does not show whether or not trial counsel attended the jury trial, therefore defendant fails to show he did *not* do so. Moreover, defendant fails to establish why, on these facts, trial counsel was obliged to personally attend the jury trial.

(4) Assuming defendant is correct that certain hearsay objections to testimony given at the court trial would have been successful, that does not of itself establish incompetence. "Because the decision whether to object is inherently tactical, the failure to object to evidence will seldom establish incompetence." (*Freeman*, *supra*, 8 Cal.4th at pp. 490-491.) For example, at times otherwise inadmissible evidence may come out in another form, or the testimony may cut two ways, or it may be insignificant in relation to the defense theory. (See, e.g., *People v. Ratliff* (1986) 41 Cal.3d 675, 692; *In re Lower* (1979) 100 Cal.App.3d 144, 150.) Defendant fails to explain how the admission of hearsay was prejudicial; she merely contends that the admission of hearsay was structural error, reversible per se, *because* the evidence was not subject to confrontation and violated due process. This overlooks the point, stated earlier, that "counsel's choice ultimately to exercise defendant's right of confrontation in only a limited manner . . . was no more than a tactical decision within counsel's discretion to make." (*Robertson, supra,* 48 Cal.3d at p. 40.)[7]

_____

[7] Defendant suggests some evidence introduced at her court trial violated the *Aranda-Bruton* rule, or violated other Confrontation Clause principles, but none of the statements

In this case, trial counsel's strategy was to emphasize the evidence of defendant's intoxication and anger at victim Taylor, and the rash actions of Armstrong, to argue defendant did not order the murder of the two victims. On appeal, defendant does not explain how quibbling over minor evidentiary points would have advanced that strategy.

Accordingly, because the record reflects a clear tactical reason for defense counsel's choices, defendant's claim of incompetence of counsel must be brought, if at all, by way of a habeas corpus proceeding. (*People v. Pope* (1979) 23 Cal.3d 412, 426.)

## DISPOSITION

The judgment is affirmed.


              DUARTE           , J.


We concur:


       HULL           , Acting P. J.


       MURRAY        , J.

---

she identifies in her brief facially incriminated her. Nor does she explain how those statements were significant in the context of all the trial evidence.