[Crim. No. 17260. Fourth Dist., Div. Three. Feb. 29, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
DONG A. TRAN et al., Defendants and Appellants.

**COUNSEL**

Irving A. Kanarek for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Keith I. Motley and Michael D. Wellington, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CROSBY, J.**—Tanh Tran and Dong Tran were charged in an amended information with attempted robbery (Pen. Code, §§ 664, 211)[1] and assault with a deadly weapon (§ 245, subd. (a)). The latter was also charged with misdemeanor assault and battery (§§ 240, 242). Armed and use enhancements were alleged respectively (§§ 12022.5, 12022, subd. (a)).

The jury was sworn, and the victim related a confusing, disjointed statement through a Vietnamese interpreter to the effect he was approached by the Trans as he was leaving the financial aid office at Santa Ana College on August 4, 1982. They assaulted him when he refused Dong's request for money. Dong then pointed a gun at him and told him to leave the state.

The court recessed before cross-examination by defense counsel. After the recess, Tanh and his counsel waived jury, stipulated disturbing the peace (§ 415) was a lesser included offense, and agreed to submit the determination of *guilt or innocence to the court*. Dong and his counsel also waived jury, stipulated brandishing a firearm (§ 417) was a lesser included offense,

---

[1]All statutory references are to the Penal Code.

and submitted the matter. The prosecution accepted the stipulations on the record and rested. Defense counsel did not cross-examine and rested without presenting any evidence.

The court immediately found the defendants guilty of the stipulated lesser included offenses and not guilty of all other charges. Each requested immediate sentencing, and the court imposed a 60-day jail term (with credit for 60 days time served) and 3 years informal probation.

■■ ■ ■■ ■ Defendants retained new counsel who contends on appeal former counsel in effect entered into a "slow plea" which the court accepted without satisfying the requirements of *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].[2] ■ Those cases make clear a guilty plea cannot stand unless the record in some manner indicates a free and intelligent waiver of the privilege against self-incrimination and the rights to trial by jury and to confront one's accusers. The record must also expressly demonstrate the defendant understood the nature and consequences of the plea.[3]

■ Incredibly, the Attorney General claims there was no slow plea here. He argues this was a routine, legitimate trial, although there was but one witness, no cross-examination, no defense, and no argument by either side. In deference to the Attorney General, we assume contested felony cases do occasionally occur which fit this description, although we have not seen any. But the prosecution does not stipulate disturbing the peace is a lesser included offense of robbery in actual trials in our experience. Nor are 60-day "time served" sentences recommended by prosecutors or accepted by judges in robbery cases with guns in the real world of real trials. Nor could they be *without a reduction of the charge.* (See *People* v. *Tanner* (1979) 24 Cal.3d 514 [156 Cal.Rptr. 450, 596 P.2d 328].) We cannot agree this was not a slow plea, although we do appreciate the Attorney General's eschewing the argument no plea could have occurred because it would have

---

[2]We venture to define the term "slow plea." It is an agreed-upon disposition of a criminal case via any one of a number of contrived procedures which does not require the defendant to admit guilt but results in a finding of guilt on an anticipated charge and, usually, for a promised punishment.

[3]Section 1016.5, subdivision (a), also requires an advisement, in all but infraction cases, that a guilty plea might lead to deportation, exclusion from the country, or denial of naturalization. These defendants might well have cause for concern on this score, although the defense has never asserted the right to withdraw the plea afforded by section 1016.5, subdivision (b).

been expressly prohibited by statute. (§ 1192.7)[4] We suspect that is exactly why this record is inadequate. After the prosecution's case faltered on direct examination of the victim, the trial court engaged in a legal charade with defense counsel and the prosecutor as principal actors; and the Attorney General apparently feels bound to see the theatrics through to the end.

■ Where "the defendant submits his case on a transcript of the preliminary hearing which under the circumstances can offer him no hope of acquittal, such submission is tantamount to a plea of guilty and must be accompanied by the constitutional and statutory safeguards which such a plea entails." (*In re Mosley* (1970) 1 Cal.3d 913, 927 [83 Cal.Rptr. 809, 464 P.2d 473].) In *People* v. *Levey* (1973) 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452], the Supreme Court reversed a conviction following submission of the case to the court after the defendant waived jury and the right to confront witnesses and admitted on the record "he understood the transcript contained only evidence pointing to his guilt and no evidence indicating his innocence, and that the court would in all likelihood find him guilty as charged." (*Id.,* at p. 651.) Although the *Levey* facts were, as this record suggests but does not expressly reveal, "that the stipulation was entered into as a result of negotiations between defendant and the prosecution" (*ibid.*), the court nevertheless reversed because defendant was not advised of, and did not expressly waive, the right against compulsory self-incrimination.

■ We perceive no meaningful difference between *Levey* and this case. The waivers and stipulations as to lesser included offenses and the agreement to submit the matter to the court for determination without cross-examination or presentation of a defense obviously constituted a negotiated disposition designed to conclude the matter exactly as it in fact was. But, as in *Levey,* defendants did not waive their privilege against self-incrimination.[5] Worse, on this record we have no way of confirming defendants

---

[4]Section 1192.7 was part of Proposition 8, passed June 8, 1982, and fully applicable to this case. It forbids plea bargaining in a number of charged offenses, including robbery and felonies where the perpetrator personally uses a deadly weapon. The only way the prosecution can escape its ban—where the victim is available—is to make the difficult, perhaps impolitic, concession that "there is insufficient evidence to prove the people's case" (§ 1192.7, subd. (a)). This admission, of course, would make defense counsel's position uncomfortable. How can he recommend a guilty plea to even disturbing the peace, for example, where the prosecution concedes it cannot win?

The Attorney General is the victim of a similar dilemma. If he agrees this was a plea bargain, he concedes the prosecution did what it cannot do and perhaps jeopardizes the bargain. If he admits the bargain, he risks the fruits with, as we shall see, zero to gain.

[5]The Attorney General argues this is meaningless because defendants did not incriminate themselves, as in an actual plea. He is wrong for at least three reasons: (1) The defendant does not literally incriminate himself in most submission on the transcript cases, because his testimony, particularly *self-incriminating* testimony, is rarely in the record; (2) The effect

were even aware of the nature and consequences of the stipulations and waivers. There was no warning, as in *Levey,* that they were likely to be convicted of *anything.* Since counsel simply lacks the authority to plead a client guilty without his informed consent (*Brookhart* v. *Janis* (1966) 384 U.S. 1, 7-8 [16 L.Ed.2d 314, 318-319, 86 S.Ct. 1245]), the judgment must be reversed.

We find no merit in defendants' contentions sections 415 and 417 are not lesser included offenses of those charged. Whether they are or not is irrelevant. The charges are supported by a factual basis in the trial record and were undoubtedly within the range of the evidence adduced at the preliminary hearing. (See § 739.) The court would have been within its discretion in permitting their addition to the information on the prosecution's motion without a stipulation.

Since the trial was in progress and the court expressly found defendants not guilty of all offenses except disturbing the peace and exhibiting a weapon, on remand Dong Tran may be prosecuted only for violation of section 417 and Tanh Tran of section 415.[6] ▮ ▮▮▮ They have been placed in jeopardy on the greater charges. (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 607-608 [119 Cal.Rptr. 302, 531 P.2d 1086].)[7]

Judgment reversed.

Wallin, Acting P. J., and Sonenshine, J., concurred.

---

is the same whether the plea is of the ordinary or slow variety; defendant accepts conviction without, perhaps, knowing he had a choice as to whether to testify; and (3) The Fifth Amendment includes the *right to testify,* and it is an important part of the waiver which should be personally acknowledged by every defendant in every guilty plea, slow or not.

[6]The Attorney General has conceded by letter brief after oral argument that the original charges cannot now be revived.

[7]Although defendants argue they in effect pleaded guilty, they apparently failed to seek a certificate of probable cause per section 1237.5. We note with some irony that while this failure may absolutely bar the appeal of a similarly situated defendant who in fact enters a defective plea of guilty (*People* v. *Patterson* (1984) 151 Cal.App.3d 252 [198 Cal.Rptr. 585]), it does not bar the appeal of a defendant whose "trial" results in a de facto plea. *Bunnell* v. *Superior Court, supra,* 13 Cal.3d 592, 603-604 holds a sham trial is both a trial and a plea. Thus, while jeopardy attaches to the greater charges, no certificate of probable cause is required to attack the lesser ones.