[Crim. No. 25362. Jan. 2, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD JUDSON WRIGHT, Defendant and Appellant.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Nancy Ann Stoner, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BROUSSARD, J.—Defendant was convicted in a court trial of one count of first degree murder (Pen. Code, § 187), one count of burglary (Pen. Code, § 459), and three counts of robbery (Pen. Code, § 211) and given consecutive sentences with enhancements for prior felony convictions and being armed with a firearm (Pen. Code, § 12022, subd. (a)). He contends his convictions must be reversed without a showing of prejudice because the court failed to give the advisements and take the waivers required by *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086] for submissions on the transcript of a preliminary hearing.[1] For reasons discussed within, we hold that the trial court erred in failing to advise defendant that the submission would require him to waive his privilege against self-incrimination and in failing to advise him of the potential range of punishment. Because the submission was not tantamount to a plea of guilty, the *Bunnell* error requires reversal only if the error was prejudicial to the defendant. We affirm the judgment of the Court of Appeal because it is not reasonably probable an outcome more favorable to defendant would have resulted had the error not been committed.

BUNNELL ERROR

"It has long been recognized that under the federal Constitution a defendant's plea of guilty to a criminal charge is only valid if it is voluntarily and knowingly made." (*Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 291 [110 Cal.Rptr. 329, 515 P.2d 273].) In *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], the United States Supreme Court held that an appellate court may not presume from a "silent record" that a defendant has voluntarily and intelligently waived the constitutional rights which he implicitly relinquishes by entering a plea of guilty. A few months later, in *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], certiorari denied, *Tahl* v. *California* (1969) 398 U.S. 911 [26 L.Ed.2d 72, 90 S.Ct. 1708], we construed *Boykin* to require the record to reveal "on its face" that the trial court, before accepting a guilty plea, expressly advised the accused and obtained his or her waiver of the full panoply of

---

[1] The petition for review also challenged the fugitive warrant that led to defendant's arrest. We do not reach that issue because we limited review to those issues arising under *Bunnell*. (Cal. Rules of Court, rule 29.2(b).)

constitutional rights: the rights to trial by jury, to confront and cross-examine witnesses, and against self-incrimination. We have often reiterated the *Boykin-Tahl* requirement that the record show explicit advisements and waivers of constitutional rights. (*People* v. *Rizer* (1971) 5 Cal.3d 35 [95 Cal.Rptr. 23, 484 P.2d 1367] [plea of not guilty by reason of insanity]; *In re Sutherland* (1972) 6 Cal.3d 666 [100 Cal.Rptr. 129, 493 P.2d 857] [guilty plea entered pursuant to a plea bargain]; *Mills* v. *Municipal Court, supra,* 10 Cal.3d 288 [guilty plea of misdemeanor through counsel permitted if record shows defendant's awareness and personal waiver of constitutional rights]; *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561] [admission of allegations of prior felony convictions]; *People* v. *Hall* (1980) 28 Cal.3d 143, 157, fn. 9 [167 Cal.Rptr. 844, 616 P.2d 826] [stipulation to the status of ex-felon].) When the defendant actually pleads guilty or admits prior felony convictions and "no such showing appears on the face of the record[,] the conviction must be set aside." (*In re Yurko, supra,* 10 Cal.3d 857, 862; see *In re Ronald E.* (1977) 19 Cal.3d 315, 321 [137 Cal.Rptr. 781, 562 P.2d 684].)

In *In re Mosley* (1970) 1 Cal.3d 913, 924-926 [83 Cal.Rptr. 809, 464 P.2d 473], certiorari denied, *Mosley* v. *California* (1970) 400 U.S. 905 [27 L.Ed.2d 142, 91 S.Ct. 144], albeit in dictum, we extended the *Boykin-Tahl* advisement and waiver requirements to cases in which a defendant's submission on the transcript of the preliminary hearing was in fact "tantamount to a guilty plea." ▮ In *People* v. *Levey* (1973) 8 Cal.3d 648, 654 [105 Cal.Rptr. 516, 504 P.2d 452], we adopted the dictum of *Mosley* and held that if a submission is tantamount to a guilty plea, a conviction obtained without advisement and waiver of the right against self-incrimination is reversible per se.

These cases describe the right against self-incrimination in very broad terms. ▮ "The privilege against self-incrimination is applicable not only to a frank admission of guilt but also to statements which could furnish a link in the chain of evidence needed for conviction. (*Blau* v. *United States* (1950) 340 U.S. 159, 161 [95 L.Ed. 170, 172, 71 S.Ct. 223].) A defendant who by his stipulation permits the prosecution to prove its case without requiring the production of any evidence in court, other than the transcript of a prior hearing, furnishes far more than a mere link in the chain of evidence." (*People* v. *Levey, supra,* 8 Cal.3d at p. 652.) He necessarily forfeits his constitutional right against self-incrimination. In such cases, an affirmative showing of an advisement and waiver rather than a silent record is necessary to establish that the confession of guilt is voluntarily made and that the defendant has knowingly and intelligently waived his rights. (*Id.,* at pp. 653-654; *In re Tahl, supra,* 1 Cal.3d at p. 132; see *Boykin* v. *Alabama, supra,* 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280].)

Finally, in *Bunnell* v. *Superior Court, supra,* 13 Cal.3d 592, we required advisements and waivers of the constitutional rights whether or not a submission is tantamount to a plea of guilty. ■ We specifically held that "in all cases in which the defendant seeks to submit his case for decision on the transcript or to plead guilty, the record shall reflect that he has been advised of his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination. . . . Express waivers of the enumerated constitutional rights shall appear. . . . In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute . . . ." (*Id.* at p. 605.) We stated two purposes for this rule: (1) to "assur[e] criminal defendants that the full panoply of constitutional and statutory rights provided by our system of criminal justice is available to them and . . . that any waiver thereof by defendants is both voluntary and intelligent" (*id.* at pp. 605-606); and (2) to relieve trial courts of the unnecessary burden of "attempting to determine in advance of the acceptance of the submission whether guilt is apparent, acknowledged, or contested" (*id.* at p. 605). We expressed the hope that "[t]his practice will also lessen the burden on appellate courts which must now attempt to ascertain by examination of the record whether a submission was 'tantamount to a plea of guilty' " (*id.* at p. 606).

STANDARD OF REVIEW

■ There was clear error under *Bunnell* in this case. The trial court failed to advise defendant that submission on the transcript of the preliminary hearing would involve waiver of the privilege against self-incrimination. The court also failed to advise defendant on the full range of punishment, since it failed to advise defendant on the additional terms that would be imposed because of the enhancements charged.[2] Although we have held that failure to advise and obtain waivers of any of the three fundamental constitutional rights is per se reversible error if the submission is tanta-

---

[2] We reject defendant's contention that he was entitled to separate advisements on the arming allegations, as nothing in defendant's plea separated them from the substantive offenses. (Compare *People* v. *Casarez* (1981) 124 Cal.App.3d 641 [177 Cal.Rptr. 451] [advisements required when defendant pleads guilty to the substantive counts but submits the firearm enhancement on the preliminary hearing transcript]; *People* v. *Bell* (1981) 118 Cal.App.3d 781, 785 [173 Cal.Rptr. 669] [advisements required for prior felony enhancement].) We also reject the argument that defendant was entitled to advisements when counsel stipulated to a unitary proceeding consolidating testimony on suppression motions with "trial." The stipulation was a tactical decision within the purview of trial counsel. (See, e.g., *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 781 [126 Cal.Rptr. 251, 543 P.2d 618]; *People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008], cert. den. 401 U.S. 919 [27 L.Ed.2d 821, 91 S.Ct. 903]; *People* v. *Floyd* (1970) 1 Cal.3d 694, 704 [83 Cal.Rptr. 608, 464 P.2d 641, cert. den. 406 U.S. 972 [32 L.Ed.2d 672, 92 S.Ct. 2418].)

mount to a guilty plea (*People* v. *Levey, supra,* 8 Cal.3d at p. 654; *In re Mosley, supra.* 1 Cal.3d at pp. 924-926), we have never squarely addressed the question of the appropriate standard of review for failure to advise and take a waiver of the privilege against self-incrimination in cases where the submission is not a slow plea. The Courts of Appeal have reached conflicting conclusions on the issue.

One line of authority adopts the *Watson* test of prejudice (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], cert. den. 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70]) and holds that *Bunnell* error does not require reversal where the submission is not tantamount to a guilty plea, unless the record shows that it is reasonably probable that the outcome would have been different if no error had been committed. (*People* v. *Mora* (1984) 153 Cal.App.3d 18, 24-25 [199 Cal.Rptr. 904]; *People* v. *Orduno* (1978) 80 Cal.App.3d 738, 748-749 [145 Cal.Rptr. 806], cert. den., *Orduno* v. *California* (1979) 439 U.S. 1074 [59 L.Ed.2d 41, 99 S.Ct. 849]; *People* v. *Smith* (1977) 70 Cal.App.3d 306, 314 [138 Cal.Rptr. 783]; *People* v. *Ingram* (1976) 60 Cal.App.3d 722, 726-727 [131 Cal.Rptr. 752].)[3] Courts in the *Ingram* line regard the *Bunnell* requirement of advisements and waivers for submissions that are not tantamount to a plea of guilty to be a judicial rule of criminal procedure that is based not on the Constitution but on a policy to lessen the burden on trial courts. (See *People* v. *Cahan* (1955) 44 Cal.2d 434, 442 [282 P.2d 905, 50 A.L.R.2d 513].)

A second line of cases finds failure to advise and obtain waivers of the constitutional rights to be reversible per se. (*People* v. *Drieslein* (1985) 170 Cal.App.3d 591, 597-599 [216 Cal.Rptr. 244]; *People* v. *Romanoski* (1984) 157 Cal.App.3d 353, 356 [204 Cal.Rptr. 33]; *People* v. *Wells* (1983) 149 Cal.App.3d 497, 501 [195 Cal.Rptr. 608]; *People* v. *Casarez, supra,* 124 Cal.App.3d at p. 651; *People* v. *Kirkwood* (1977) 70 Cal.App.3d 290, 292-294 [138 Cal.Rptr. 649].) These cases regard even a contested submission as implicating constitutional rights and maintain that applying a prejudice standard at the appellate level would undermine *Bunnell*'s constitutionally mandated policy of giving maximum assurance that even those defendants who contest their guilt by preserving the right to present additional evidence be made aware of the significant rights that are implicated.

Some of the advisements and waivers mandated by *Bunnell* are not constitutionally compelled (see *Bunnell* v. *Superior Court, supra,* 13 Cal.3d at p. 605), and their omission does not require reversal unless the error is

---

[3] Some cases in the *Ingram* line have also analyzed prejudice by applying the harmless-beyond-a-reasonable-doubt standard of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (E.g., *People* v. *Orduno, supra,* 80 Cal.App.3d at pp. 749-750.)

prejudicial. ■ For example, the rule compelling an admonishment of the consequences of an admission which may subject the defendant to severe sanctions is a judicially declared rule of criminal procedure. (*In re Yurko, supra,* 10 Cal.3d at p. 864.) "Unlike an uninformed waiver of the specified constitutional rights which renders a plea or admission involuntary and requires that it be set aside, an uninformed waiver based on the failure of the court to advise an accused of the consequences of an admission constitutes error which requires that the admission be set aside only if the error is prejudicial to the accused. (*In re Ronald E., supra,* 19 Cal.3d at p. 321.)

■ We now hold that *Bunnell's* requirement of a self-incrimination advisement and waiver is not constitutionally compelled for submissions that are not tantamount to a plea of guilty. If the submission does not amount to a slow plea of guilty, there is no involuntary confession of guilt. *Boykin-Tahl* admonishments and waivers in such contested submissions are required only to effectuate the judicial policies of minimizing error, maximizing protection of defendants' constitutional rights, and eliminating the necessity of requiring trial and appellate courts to determine whether a submission is a slow plea. A trial court's failure to comply with this judicial rule of criminal procedure requires reversal only if it is reasonably probable a result more favorable to the defendant would have been reached if he had been properly advised. [4] (Cal. Const., art. VI, § 13; *People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

Because omissions of the self-incrimination advisement and waiver are per se reversible for slow pleas but subject to a *Watson* test of prejudice if guilt remains contested after the submission, trial courts are advised to abide by the *Bunnell* requirement to give admonishments and obtain waivers in *all* submission cases. By complying with *Bunnell,* trial courts avoid having to surmise whether a defendant who submits his case on the transcript of a prior proceeding acknowledges and will continue to acknowledge guilt or contests guilt and will continue to do so. Compliance with *Bunnell* also will lessen the burden on appellate courts. Unfortunately, when trial courts fail to obey the *Bunnell* requirement to advise defendants in submission cases of their rights, the bifurcated standard of review we announce today compels appellate courts to make the burdensome determination *Bunnell* was intended to avoid.

## SLOW PLEAS

■ Our inquiry now is whether the submission in this case was a slow plea. If it was, the judgment *must* be reversed because defendant was not

---

[4] We recognize that the record in submission cases often is silent as to the prejudicial effect of *Bunnell* error. Although it may be inherently impossible to find prejudice on appeal, defendant may attempt to affirmatively demonstrate prejudice in a writ of habeas corpus. (See *In re Ronald E., supra,* 19 Cal.3d at pp. 322-323, fn. 3.)

advised of his privilege against self-incrimination. (*People* v. *Levey, supra,* 8 Cal.3d at p. 653.) If it was not, the *Bunnell* errors must be evaluated under the *Watson* test for prejudice.

■ In *People* v. *Tran* (1984) 152 Cal.App.3d 680, 683, footnote 2 [199 Cal.Rptr. 539], the Court of Appeal ventured to define the term "slow plea." "It is an agreed-upon disposition of a criminal case via any one of a number of contrived procedures which does not require the defendant to admit guilt but results in a finding of guilt on an anticipated charge and, usually, for a promised punishment." Perhaps the clearest example of a slow plea is a bargained-for submission on the transcript of a preliminary hearing in which the only evidence is the victim's credible testimony, and the defendant does not testify and counsel presents no evidence or argument on defendant's behalf. Such a submission is "tantamount to a plea of guilty" because "the guilt of the defendant [is] apparent on the basis of the evidence presented at the preliminary hearing and . . . conviction [is] a foregone conclusion if no defense [is] offered." (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d at p. 602; accord *People* v. *Levey, supra,* 8 Cal.3d at p. 651.)

Submissions that are not considered slow pleas include those in which (1) the preliminary hearing involves substantial cross-examination of the prosecution witnesses and the presentation of defense evidence or (2) the facts revealed at the preliminary examination are essentially undisputed but counsel makes an argument to the court as to the legal significance to be accorded them. (*In re Mosley, supra,* 1 Cal.3d at pp. 924-925, fn. 9.)

The wide variety of submissions that fall between these extremes, however, present troublesome classification problems. When the defendant reserves the right to testify or offer evidence and the record shows no sign of negotiations between defendant and prosecution, the submission may or may not be a slow plea. Some defendants submit their cases on the transcript simply to achieve the effect of a guilty plea without actually having to admit guilt in open court and on the record. Others submit not to contest guilt but to avoid expensive or burdensome trials or to impress upon the trial judge the mitigating factors for sentencing. Some defendants appear to concede guilt as to one or more of the offenses but contest it as to others.

■ An appellate court, in determining whether a submission is a slow plea, must assess the circumstances of the entire proceeding. It is not enough for a reviewing court to simply count the number of witnesses who testified at the hearing following the submission. A submission that prospectively appeared to be a slow plea may turn out to be part of a full-blown trial if counsel contested the sufficiency of evidence for those counts or presented another potentially meritorious legal argument against convic-

tion. Conversely, a submission that did not appear to be a slow plea because the defendant reserved the right to testify and call witnesses or to argue the sufficiency of the evidence (see *People* v. *Guerra* (1971) 21 Cal.App.3d 534, 538 [98 Cal.Rptr. 627]) may turn out to be a slow plea if the defense presented no evidence or argument contesting guilt.

If it appears on the whole that the defendant advanced a substantial defense, the submission cannot be considered to be tantamount to a plea of guilty. Sometimes, a defendant's best defense is weak. He may make a tactical decision to concede guilt as to one or more of several counts as part of an overall defense strategy. A submission under these circumstances is not a slow plea, and the trial court is not constitutionally compelled by *Boykin* and *Tahl* to administer the guilty-plea safeguards to assure that the tactical decision is voluntary and intelligent. The advisements and waivers in such a case are required only as a matter of the judicial policies that underlie our decision in *Bunnell.*

In this case, defendant waived his right to jury trial on the murder, burglary, and robbery charges, as well as the arming allegations.[5] The parties submitted the case to the court on the preliminary hearing transcript, with both sides reserving the right to present evidence. Defendant was advised that the submission required him to waive his right to confront and cross-examine witnesses who had testified at the preliminary hearing, and that on the basis of the preliminary hearing transcript, the court could find him guilty of all charges. Defendant said he understood and waived his right to confrontation. Counsel also stipulated that the court would hear evidence on defendant's motion to suppress under Penal Code section 1538.5 and his motion to suppress his statements under Evidence Code section 402 as part of the court trial.

The preliminary hearing evidence on which the case was submitted was that defendant had proposed the burglary of the residence of one Mr. Houts, defendant's former employer, to his brother Curtis. While defendant waited in the car, Curtis found Mr. Houts, struck him with a sawed-off shotgun, forced him to sign two blank checks, tied him up, and shot him in the back. When Curtis came out and asked defendant what to do next, defendant threw up his hands and walked away, saying, "Hey you did it. You're going to have to deal with it." Curtis killed Mr. Houts with another shot, and both men cleaned the home and buried the body, then drove off in

---

[5] As to the allegations that defendant had suffered prior convictions, defendant was advised of his right to jury trial, to confront and cross-examine witnesses and against self-incrimination, as well as of the penal consequences of admitting the allegations. He does not dispute the propriety of the advice and his waivers as to these enhancements.

the victim's car. The magistrate suppressed defendant's first confession to these crimes, but admitted a second one. There was also evidence that Curtis had robbed two convenience stores, using a sawed-off shotgun. Defendant's second confession included an admission that he had been the getaway driver in these robberies. Defendant presented no evidence at the preliminary hearing, though defense counsel did actively cross-examine the witnesses.

The trial court also heard four prosecution witnesses and five defense witnesses, including defendant. Most of the testimony related to the suppression motions. The court denied the motions and admitted both confessions into evidence. Additional evidence presented by the prosecution included testimony by Percy Owens, defendant's employer some time before he worked for Mr. Houts. Owens had fired defendant because he suspected defendant was involved in the theft of some of his property. Subsequently, defendant confronted Owens with a shotgun, struck him, stole a pistol, demanded that Owens sign some checks, and drove off in Owens's car.

Defendant's family testified that Curtis was violent and defendant was not and that Curtis was the leader and defendant the follower. Defendant testified consistently with his confession that he planned to burglarize the Houts residence only if no one was home. Curtis was selected to approach the house because he was unknown to Houts. If Houts was not home, Curtis was to signal defendant to come to the house. If Houts was home, Curtis was only to ask if there was any work for him on the ranch. Defendant testified that he neither planned nor intended for Curtis to rob Houts or force him to sign checks. Although he was aware Curtis had a shotgun with him, defendant did not discuss this with Curtis.

Defendant argues that the partial submission on the preliminary hearing transcript was tantamount to a guilty plea, since he put on no defense to the convenience store robberies and admitted involvement in the burglary and did not put on a full defense to the crimes against Mr. Houts. Rather, defendant attempted to prove that he did not have the independent malice that he thought was required for an accomplice's liability in a felony murder. Because this court rejected defendant's theory of independent malice in an opinion that was filed five months after the trial (*People* v. *Dillon* (1983) 34 Cal.3d 441, 465-476), defendant contends that he in effect presented no defense to the crimes against Mr. Houts.

Considering the submission in the context of the evidence, the suppression motions, and defense counsel's argument, we find that the submission was not tantamount to a plea of guilty. Defendant put on the best defense he could. Although he presented no evidence contesting his involvement in

the convenience store robberies, defense counsel established by cross-examination of the victims that they could not link defendant to the crimes. He had convinced the court at the preliminary hearing that his first confession to driving the getaway car should be suppressed. If the trial court had agreed and, in addition, found the second confession to be tainted by the first, the evidence would have been insufficient to convict defendant of these robberies.

Defense counsel also contested defendant's guilt for the crimes related to Mr. Houts. Although defendant did not dispute the essential facts relating to these crimes, and indeed admitted them on the stand, counsel argued that Curtis unforeseeably acted on his own when he proceeded with the burglary and other crimes after finding Mr. Houts at home, that defendant was not an aider and abettor in the robbery of Mr. Houts, and that defendant withdrew from any criminal conspiracy before Curtis fired the shot that killed Mr. Houts. Defendant also put on witnesses whose testimony supported an inference that he did not share his brother's criminal intent. We conclude that the circumstances of the submission clearly establish that it was not a slow plea of guilty.

■■■ Although the trial court erred in failing to advise defendant that the submission required him to waive his right against self-incrimination, and in failing to advise fully on the range of punishment, the record does not show it was reasonably probable the outcome would have been more favorable to defendant if he had been properly advised. There was overwhelming evidence, including defendant's own testimony, that defendant participated in the burglary and that Curtis used a weapon in the course of that offense. This evidence clearly established defendant's culpability in the robbery and murder. Nor is it reasonably probable that full advice on the range of punishment would have prompted defendant to have proceeded any differently. He thought he could refute his criminal complicity in the murder and robbery and sought to avoid conviction in the other robberies by excluding his confession. He knew that he risked a term of 25 years to life; it is unlikely that he would have changed his strategy had he known the full risk was 32 years to life.

The judgment of the Court of Appeal is affirmed.

Mosk, J., Reynoso, J., and Grodin, J., concurred.

Lucas, J., and Panelli, J., concurred in the judgment.

Bird, C. J., concurred in the judgment as any error was harmless beyond a reasonable doubt.