Filed 12/9/13  P. v. Hammond CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SCOTT JAMES HAMMOND,<br><br>Defendant and Appellant. | C072045<br><br>(Super. Ct. No. 12NCR09173) |

Based on stipulated facts, a court convicted defendant Scott James Hammond of transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a); count I), transportation of oxycodone (Health & Saf. Code, § 11352, subd. (a); count II), and possession of drug paraphernalia, a misdemeanor (Health & Saf. Code, § 11364.1; count IV).  The court acquitted defendant on the remaining counts (being under the influence of methamphetamine and driving with a suspended license, both misdemeanors; counts III and V, respectively).

Granted probation, defendant appeals.  He contends (1) the trial court committed reversible error in failing to advise and obtain his waiver of his constitutional rights to

1

confrontation and against self-incrimination, and (2) insufficient evidence supports his convictions for transportation in that his minimal movement of the drugs from his pocket to the floor of his car was insufficient to show the element of carrying or conveying the substances. We will affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Defendant waived his right to a preliminary hearing. When arraigned on the information, defendant waived advisement of his rights on the information. Defense counsel stated that he had discussed with defendant "waiving his right to a jury trial and doing a court trial on this matter" but that they were "not stipulating" to transportation, arguing that it was "a personal use case." The People also waived trial by jury. The court then engaged in the following colloquy with defendant:

"The Court: And Mr. Hammond, I don't know if you heard what I was mentioning to the last person who was waiving their right to a jury trial to have this issue basically before what we call our appellate courts. We're really looking at a set of circumstances to have an area of law cleared up here. But just what I told him, based upon the current set of the law, unless there's some substantial difference on the facts that you would be presenting me, I probably would find you guilty at a court trial.

"Do you understand that?

"The Defendant: Yes, sir.

"The Court: You still wish to have a court trial?

"The Defendant: Yes, sir.

"The Court: All right. And you know the difference? You had an opportunity to talk to [defense counsel] about the difference between a court trial and a jury trial?

"The Defendant: No, but I heard you talking to the last guy.

"The Court: So you know the difference then?

"The Defendant: Yes, sir.

"The Court: Thank you, Mr. Hammond."

2

At the court trial, the parties submitted and "agree[d] that the Court may enter its verdict and judgment" on a stipulated factual statement. At the court's request, the prosecutor read the stipulated factual statement into the record:

"On March 25, 2012 Glenn County Sheriff's deputies Jon Owens and Jason Holley were on patrol near the City of Orland. At approximately 9:30 p.m. they observed a car parked in the driveway at 6379 County Road 200. The car had its driving lights on and the location of the vehicle was suspicious because the house in front of which the car was parked was vacant. Deputy Owens contacted the driver, subsequently identified as Scott Hammond and asked him what he was doing at the residence. Hammond, who appeared to be under the influence of methamphetamine, indicated that he had just driven to a friend's residence behind the 6379 CR 200 address and was planning on heading back to his mother's residence on County Road G. As Owens had approached the vehicle he had observed the driver fumbling around on the front seat. Owens asked Hammond if he was on probation or parole. Hammond replied that he was on probation and that his driver's license was suspended. Hammond was asked if he had anything illegal on his person or in the vehicle. He replied that he had a pipe in his pocket and there was some meth[amphetamine] under the front seat. Hammond was also asked what he had been doing when he saw the deputies pull up. Hammond responded that he had been trying to hide his meth[amphetamine] and a few 'Percocet'. A search of Hammond's person and vehicle was conducted. A meth[amphetamine] pipe was found in his pants pocket, a small baggie of white crystalline substance was found under the driver's seat, and nine 325 mg Percocet tablets were found scattered under the seat on the floor board. Hammond was asked about the white crystalline substance and acknowledged that it was methamphetamine. Hammond stated that he had just purchased the meth[amphetamine] that date and that it was a '20 sack' (street parlance for a twenty dollar bag) and that it contained approximately .2 grams. Hammond stated that he intended to use the

3

meth[amphetamine] himself, but was planning on dropping off the Percocet at a friend's house.

"The suspected methamphetamine and Percocet was sent to the Department of Justice laboratory in Chico. It was determined that the small baggie contained .36 grams of methamphetamine and that the Percocet tablets in fact contained oxycodone (Percocet is a trade name for an acetaminophen/oxycodone combination)."

The court inquired whether defense counsel had any additional stipulations. Defense counsel stated that "the methamphetamine found was of a quantity for personal use and there was no intent to distribute." The court then entertained argument from both parties.

The prosecutor argued that the facts supported transportation even though the officers did not observe the car move, citing the vacant house, the car with its lights turned on, and defendant's statement acknowledging that he had just arrived. The prosecutor argued laboratory testing established the substances found were contraband and the quantity was of a usable amount. Finally, the prosecutor argued that the methamphetamine pipe established the paraphernalia count. The prosecutor stated, "The People have essentially abandoned the [Health and Safety Code section] 11550 and [Vehicle Code section] 14601.2 [violations] that would have been charged in this case."

Defense counsel argued that defendant's "admission" that he had "driven" to the location did not establish "where the drugs came from," noting that the officers did not observe defendant transport the drugs and there was "no evidence that the location was not where he had purchased the drugs or gotten the drugs." Defense counsel also argued that the amounts were for personal use. Upon the court's inquiry about defendant's statement that he planned to transport to furnish to someone else, defense counsel argued defendant's intent to do so did not establish movement. Defense counsel conceded that the officer observed defendant "fumbling his hands in an effort to" "conceal it."

4

In convicting defendant on both transportation counts, the court concluded that the movement required for transportation may be minimal and that the movement from defendant's "pocket to [the] floor" was sufficient. The court also convicted defendant on the paraphernalia count. The court acquitted defendant on counts III and V, "based upon the lack of no [*sic*] presentation of evidence."

## DISCUSSION

### I

Defendant contends the trial court prejudicially erred in failing to advise him of his constitutional rights upon submission of his case on a stipulated factual statement. Claiming that his submission was a "slow plea," defendant argues that the stipulated factual statement admitted every evidentiary fact or element of the charged offenses, requiring advisement and waiver of his rights. He claims a review of the entire record reflects that he did not submit with an understanding and waiver of his constitutional rights. The People argue that the circumstances here do not reflect a "slow plea" because defendant's guilt was "fully contested" in that defense counsel argued there was no evidence of transportation and that defendant was guilty of only possession. We conclude this was not a "slow plea" and any error by the trial court in accepting the stipulated facts without advisements was harmless.

Prior to accepting a defendant's guilty or no contest plea, a trial court must inform the defendant of his constitutional rights (jury trial, confrontation, and self-incrimination) and obtain his waiver. (*Boykin v. Alabama* (1969) 395 U.S. 238, 242-244 [23 L.Ed.2d 274, 279-280] (*Boykin*); *People v. Howard* (1992) 1 Cal.4th 1132, 1175, 1176, 1179; *In re Tahl* (1969) 1 Cal.3d 122, 132 (*Tahl*).) A defendant's stipulation to all the evidentiary facts or elements of an offense required for conviction also necessitates advisement and waiver of these rights. (*People v. Adams* (1993) 6 Cal.4th 570, 576-583 (*Adams*); *People v. Little* (2004) 115 Cal.App.4th 766, 772-773, 778 (*Little*).) "Although we recognized in *Bunnell* [*v. Superior Court* (1975) 13 Cal.3d 592 (*Bunnell*)] that the

5

*Boykin-Tahl* advisements might not be constitutionally required in all circumstances, we concluded that in the interest of justice it was appropriate to adopt a judicially declared rule of criminal procedure, requiring the giving of certain advisements in a broad category of cases. [¶] In subsequent decisions, we have clarified that '[u]nlike the admonition of constitutional rights, . . . advisement as to the consequences of a plea is not constitutionally mandated. Rather, the rule compelling such advisement is "a judicially declared rule of criminal procedure." ' [Citation.]" (*People v. Barella* (1999) 20 Cal.4th 261, 266.)

A "slow plea" is " 'an agreed-upon disposition of a criminal case via any one of a number of contrived procedures which does not require the defendant to admit guilt but results in a finding of guilt on an anticipated charge and, usually, for a promised punishment.' Perhaps the clearest example of a slow plea is a bargained-for submission on the transcript of a preliminary hearing in which the only evidence is the victim's credible testimony, and the defendant does not testify and counsel presents no evidence or argument on defendant's behalf. Such a submission is 'tantamount to a plea of guilty' because 'the guilt of the defendant [is] apparent on the basis of the evidence presented at the preliminary hearing and . . . conviction [is] a foregone conclusion if no defense [is] offered.' (*Bunnell* v. *Superior Court*, *supra*, 13 Cal.3d at p. 602; accord, *People* v. *Levey* [(1973)] 8 Cal.3d [648,] 651.)

"Submissions that are not considered slow pleas include those in which (1) the preliminary hearing involves substantial cross-examination of the prosecution witnesses and the presentation of defense evidence or (2) the facts revealed at the preliminary examination are essentially undisputed but counsel makes an argument to the court as to the legal significance to be accorded them. [Citation.]

"The wide variety of submissions that fall between these extremes, however, present troublesome classification problems. When the defendant reserves the right to testify or offer evidence and the record shows no sign of negotiations between defendant

6

and prosecution, the submission may or may not be a slow plea. Some defendants submit their cases on the transcript simply to achieve the effect of a guilty plea without actually having to admit guilt in open court and on the record. Others submit not to contest guilt but to avoid expensive or burdensome trials or to impress upon the trial judge the mitigating factors for sentencing. Some defendants appear to concede guilt as to one or more of the offenses but contest it as to others.

"An appellate court, in determining whether a submission is a slow plea, must assess the circumstances of the entire proceeding. It is not enough for a reviewing court to simply count the number of witnesses who testified at the hearing following the submission. A submission that prospectively appeared to be a slow plea may turn out to be part of a full-blown trial if counsel contested the sufficiency of evidence for those counts or presented another potentially meritorious legal argument against conviction. Conversely, a submission that did not appear to be a slow plea because the defendant reserved the right to testify and call witnesses or to argue the sufficiency of the evidence [citation] may turn out to be a slow plea if the defense presented no evidence or argument contesting guilt.

"If it appears on the whole that the defendant advanced a substantial defense, the submission cannot be considered to be tantamount to a plea of guilty. Sometimes, a defendant's best defense is weak. He may make a tactical decision to concede guilt as to one or more of several counts as part of an overall defense strategy. A submission under these circumstances is not a slow plea, and the trial court is not constitutionally compelled by *Boykin* and *Tahl* to administer the guilty-plea safeguards to assure that the tactical decision is voluntary and intelligent. The advisements and waivers in such a case are required only as a matter of the judicial policies that underlie our decision in *Bunnell*." (*People v. Wright* (1987) 43 Cal.3d 487, 496-497 (*Wright*).)

While the record is not a model of clarity as to the advice the trial court gave to the "last person," the colloquy between the court and defendant reflects that defendant stated

7

he understood the difference between a court trial and a jury trial and waived his right to a jury trial. Further, defense counsel stated that he had discussed with defendant waiving his right to a jury trial.

While the trial court should have advised defendant of his right against self-incrimination and right to confrontation pursuant to *Bunnell*, we conclude that any error was harmless under the circumstances here. (*Wright*, *supra*, 43 Cal.3d at p. 495.) We conclude the submission was not tantamount to a guilty plea.

True, the evidence contained in the stipulated factual statement was the only evidence used against defendant; the prosecutor did not present any additional evidence. (See *Adams*, *supra*, 6 Cal.4th at p. 581.) The prosecutor even abandoned pursuing the counts charging being under the influence and driving on a suspended license, apparently because the stipulated facts failed to sustain these charges. Defendant's stipulation "implicitly and necessarily covered all the evidentiary facts required for a conviction and imposition of punishment" on the remaining charges. (*Little*, *supra*, 115 Cal.App.4th at p. 778.)

Although the facts in the stipulated statement were undisputed, defense counsel argued that the officers did not see defendant move the car and that the drugs were possessed for personal use. Defense counsel made "an argument to the court as to the legal significance to be accorded" to the stipulated facts. (*Wright*, *supra*, 43 Cal.3d at p. 496.) Defendant claims that counsel's argument was ineffective since transportation for personal use is included in a transportation charge. Defense counsel argued that there was not any evidence of transportation because the officers did not see defendant move the car. Defense counsel argued from the outset that it was a possession case. His argument contested the sufficiency of the evidence for transportation, a substantial defense since "[e]vidence of unlawful possession is not evidence of transportation." (*People v. Kilborn* (1970) 7 Cal.App.3d 998, 1002-1003.) Thus, the submission was not tantamount to a guilty plea. (See *People v. Sanchez* (1995) 12 Cal.4th 1, 29-30,

8

disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *Wright*, *supra*, 43 Cal.3d at p. 496.) Defendant has failed to demonstrate a reasonable probability that he would have obtained a more favorable result absent his stipulation to the facts. Thus, the trial court's error in accepting the stipulated facts without compliance with *Bunnell* was harmless. Moreover, defendant's waiver of his right against self-incrimination was not required since he did not testify. (*Sanchez*, *supra*, 12 Cal.4th at p. 30.)

## II

Defendant challenges the sufficiency of the evidence to support his convictions for transportation and, even then, challenges only the element of carrying or conveying. We conclude sufficient evidence supports his convictions for transportation.

"To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.)

Here, "transport" does not have a technical meaning peculiar to the law. It means " 'to carry or convey from one place to another.' " (*People v. LaCross* (2001) 91 Cal.App.4th 182, 185 (*LaCross*).)

The trial court's statement that defendant's movement from his "pocket to [the] floor" constituted sufficient movement for transportation is incorrect. The movement required here is the movement of the methamphetamine " 'from place to place, rather than merely held at one location.' " (*LaCross*, *supra*, 91 Cal.App.4th at p. 186; see also *People v. Ormiston* (2003) 105 Cal.App.4th 676, 684-685 ["the requirement of volitional transport of methamphetamine from *one location to another* avoids any unwarranted extension of the statute to restrained minimal movement within a residence or other confined area that does not facilitate trafficking, distribution or personal use of drugs"].)

The methamphetamine here was held in one location, the car, and the officers did not observe the car move. However, sufficient evidence supports defendant's convictions for transportation.

Defendant admitted (1) he had just driven to the location, (2) a friend lived behind the vacant house, (3) defendant had just purchased the methamphetamine "that date," (4) he had been trying to hide the drugs when the officer approached, (5) he planned to use the methamphetamine, and (6) he planned to give the Percocet to a friend. Defendant was sitting in the car parked in the driveway of a vacant house and his car lights were on. Under the circumstances, the only reasonable inference was that defendant had driven the car with the methamphetamine and oxycodone to that location. Circumstantial evidence proved beyond a reasonable doubt that he transported the methamphetamine and oxycodone found in his car by driving with those drugs in his possession.

**DISPOSITION**

The judgment is affirmed.

RAYE , P. J.

We concur:

ROBIE , J.

HOCH , J.

10