Filed 3/9/23  P. v. Harris CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B309051 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA139667) |
| v. | |
| BYRON SAMUEL HARRIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Roger Ito, Judge.  Reversed.

Lori Nakaoka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Byron Samuel Harris was charged with five counts of robbery. Harris pled not guilty and not guilty by reason of insanity. The trial court held a bifurcated bench trial as to guilt and sanity. The guilt phase was submitted solely on the basis of the preliminary hearing transcripts. Defense counsel made no argument at the guilt phase of trial, and the trial court found Harris guilty on all five counts. Subsequently, at the sanity phase, the trial court found Harris sane at the time of the robberies.

On appeal, Harris argues that the trial court committed reversible error by failing to obtain his valid consent to submit the guilt phase of the trial on the preliminary hearing transcripts. We conclude that the submission on the preliminary hearing transcripts was a slow plea. We also conclude that the record does not affirmatively show that, under the totality of the circumstances, Harris intelligently waived his right to confront and cross-examine witnesses or his right against self-incrimination when he consented to trial on the preliminary hearing transcripts. Accordingly, we reverse.[1]

---

[1] Because we reverse on this basis, we need not reach Harris's claims that (1) reversal is also warranted because he was incompetent at the time of the preliminary hearing on counts 1 through 3; (2) his jury trial waiver was invalid; (3) the evidence is insufficient to sustain his conviction on count 3; and (4) remand for resentencing is required under the recent amendments to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Harris was charged by information with five counts of robbery (Pen. Code, § 211) based upon four separate incidents that took place in July 2015 in Long Beach, Lakewood, and Norwalk, California. Counts 1 to 3 alleged three separate robberies. Counts 4 and 5 were based on a single alleged robbery involving two victims. Harris was arrested on July 22, 2015.

The preliminary hearing for counts 1 to 3, concerning the Lakewood and Norwalk incidents, took place on August 5, 2015. Defense counsel did not put on evidence but cross-examined witnesses. The defense also made a motion that Harris be held to answer on the lesser offense of grand theft due to insufficient evidence, which the judge rejected. An information on these counts was filed on August 20, 2015. Harris was arraigned that same day.

The preliminary hearing for the Long Beach incidents, concerning counts 4 and 5, took place on February 28, 2017. At the preliminary hearing on these counts, defense counsel did not put on evidence but cross-examined witnesses. Counsel moved to dismiss based upon insufficiency of the evidence, without any argument, and the court rejected the motion.

On September 11, 2017, the Long Beach case was consolidated with the Norwalk and Lakewood cases. Harris subsequently pled not guilty and not guilty by reason of insanity to all five counts on an amended, consolidated information.

On June 26, 2019, Harris waived his right to a jury trial. During this hearing, Harris told the court he did not want to waste the court's time because he was "pretty much guilty" of one of the charges and had told the officers who arrested him that. The trial court informed Harris that he had the right to plead

3

guilty, but defense counsel interjected, stating that he wanted to get Harris the "optimal outcome" and thought that during the "guilt phase [this evidence] may not lead to an acquittal, but [it] will lead to a better outcome . . . ."  Counsel went on, "I don't see any upside for [*sic*] pleading at this point because we're not trying to play the court as far as guilt or innocence."

Two days later, on June 28, 2019, Harris also agreed to submit the guilt phase of the trial to the court solely on the preliminary hearing transcripts.  The trial court's conversation with Harris to obtain his consent went as follows:

"Mr. Harris, a couple things before we get started. . . .  I've had this discussion with the attorney and with the deputy D.A., and I want to make sure you're aware of this and this is the way we are planning on proceeding and it's okay with you.  [¶]  And that is, [defense counsel] has indicated that he does not desire to have those witnesses physically come in.  However, they already testified at preliminary hearings . . . .  And what [defense counsel] has indicated, at least for this portion of the trial, which is for me to determine whether or not you're guilty of one or more of those crimes, I would review the transcript and then make my determination as to whether or not you're guilty of one or more of those crimes just by review of the transcript."  The judge then noted that defense counsel had cross-examined the witnesses at the preliminary hearings and had been "pretty thorough" in that examination as to the "nature" of the crimes.

The trial judge then asked Harris if he was in agreement that the court could review the transcripts and "make the determination as to whether or not you're guilty beyond a reasonable doubt as to one or more of those counts, count 1 through 5."  Harris responded that he thought it was only one

4

count. The trial judge replied that there were five counts, and Harris replied that he thought "Rio Hondo proved some out." The trial judge then told Harris that he would look into the issue.

The trial court next explained to Harris that if the court found Harris guilty on one or more of the offenses, the trial would proceed to a second, sanity phase of the trial. After a discussion of when the second phase of the trial could be completed, Harris told the court that he was in agreement with submitting on the preliminary hearing transcripts for purposes of determining guilt.

After obtaining Harris's consent to submission of the guilt phase on the preliminary hearing transcripts, the trial court informed Harris that "[i]n exchange for this the prosecution . . . has agreed to strike . . . [a] prior strike offense. They're striking it. In other words, you are not going to be sentenced on that prior strike offense." It went on to say that "at least in terms of whether or not it could double your sentence, they're agreeing— because you're agreeing to this, they're agreeing to go ahead and strike that." It later elaborated, "it will prevent any of these counts from being doubled."

The trial court then adjourned for lunch. Afterwards, it announced that it had read the preliminary hearing transcripts and was giving both sides "a chance to be heard as to the sufficiency of the evidence." Defense counsel replied without any such argument, simply stating "[s]ubmitted, Your Honor." The People also submitted without argument. The trial court then held that "[b]ased on my review of the preliminary hearing transcripts, I do in fact find beyond a reasonable doubt that Mr. Harris is guilty [of counts 1 through 5]."

The sanity phase of the bench trial took place approximately four months later, in November 2020.  The court found that Harris was sane at the time of the July 2015 robberies, so it rejected his claim of not guilty by reason of insanity.

This appeal followed.

## DISCUSSION

Harris argues that the trial court did not obtain his valid consent to submit the question of guilt on the preliminary hearing transcripts, and thus reversal on all five counts is required.  He asserts that his consent was a "slow plea," tantamount to a guilty plea, made without any awareness of the fundamental rights he was relinquishing and the consequences of his decision.

The People do not claim that Harris was given the proper advisal when he agreed to submit on the preliminary hearing transcripts.  Instead, the People argue that the submission on the preliminary transcripts was not tantamount to a guilty plea, thus not a slow plea, so any error in failing to properly advise Harris was subject to harmless error review and was harmless.

## I.    Background on Slow Pleas

Our Supreme Court recently explained that "[w]e have defined a slow plea as an ' " 'agreed-upon disposition . . . which does not require the defendant to admit guilt but results in a finding of guilt . . . usually, for a promised punishment.' " ' [Citation.]  A recognizable example of a slow plea 'is a bargained-for submission on the transcript of a preliminary hearing in which the only evidence is the victim's credible testimony, and the defendant does not testify and counsel presents no evidence or argument on defendant's behalf.' [Citation.]  This type of

6

submission is tantamount to a guilty plea because the defendant's guilt is apparent on the evidence presented at the preliminary hearing and conviction is a foregone conclusion as no defense is mounted.  [Citation.]  A submission occurs when the defendant gives up his or her right to a jury trial, the right to present additional evidence as part of a defense and agrees the court can decide the case on the basis of the transcript of prior proceedings."  (*People v. Morelos* (2022) 13 Cal.5th 722, 744–745 (*Morelos*).)

"Deciding whether a submission is a slow plea is often difficult, and courts generally review such pleas based on defendant's willingness to contest guilt during the court trial." (*People v. Sanchez* (1995) 12 Cal.4th 1, 28 (*Sanchez*), disapproved of on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  "An appellate court, in determining whether a submission is a slow plea, must assess the circumstances of the entire proceeding. . . .  A submission that prospectively appeared to be a slow plea may turn out to be part of a full-blown trial if counsel contested the sufficiency of evidence for those counts or presented another potentially meritorious legal argument against conviction.  Conversely, a submission that did not appear to be a slow plea because the defendant reserved the right to testify and call witnesses or to argue the sufficiency of the evidence [citation] may turn out to be a slow plea if the defense presented no evidence or argument contesting guilt.  [¶]  If it appears on the whole that the defendant advanced a substantial defense, the submission cannot be considered to be tantamount to a plea of guilty.  Sometimes, a defendant's best defense is weak.  He may make a tactical decision to concede guilt as to one or more of several counts as part of an overall defense strategy.  A

7

submission under these circumstances is not a slow plea . . . ." (*People v. Wright* (1987) 43 Cal.3d 487, 496–497 (*Wright*), abrogated on another ground as recognized by *People v. Mosby* (2004) 33 Cal.4th 353 (*Mosby*).)

## II.     Submission of the Guilt Phase of the Trial on the Preliminary Hearing Transcripts Was a Slow Plea Under the Circumstances of the Entire Proceeding

We conclude that Harris's consent to submission of the guilt phase of the trial on the preliminary hearing transcripts was a slow plea.  The submission was a bargained-for agreement between the parties.  As the trial court stated, in "exchange" for Harris agreeing to submit on the transcripts, the People agreed to strike a prior offense, which impacted the potential sentence. The defense submitted the guilt phase of the trial entirely on the preliminary hearing transcripts, and the only evidence in the transcripts was the victims' testimony.  (*Morelos*, *supra*, 13 Cal.5th at p. 744.)  Counsel did not make any argument at the guilt phase of trial.

The People assert that because defense counsel made arguments as to the sufficiency of the evidence at the preliminary hearings, the submission is not a slow plea.  We disagree. We consider the totality of the circumstances, and look to whether the defense contested guilt "during the court trial." (*Sanchez*, *supra*, 12 Cal.4th at p. 28.)  Thus, a plea that did not initially appear to be a slow plea may become one if, as is the case here, "the defense presented no evidence or argument contesting guilt."  (*Wright*, *supra*, 43 Cal.3d at p. 497.)  In cases where our Supreme Court has found a submission on the transcripts was not a slow plea, the defendant asserted at least some defense at trial.  (*Id.* at pp. 498–499 [trial court heard from five defense

8

witnesses and defense contested guilt for some of the crimes]; *Sanchez,* at p. 28 [defense counsel moved for judgment of acquittal and to strike prosecution's evidence, and made arguments against guilt].)

*People v. Dakin* (1988) 200 Cal.App.3d 1026, cited by the People, is inapposite. *Dakin* concerned materially different facts. The court found relevant that the submission was *not* made in exchange for any agreement with the prosecution. (*Id.* at p. 1032.) It also found relevant that defense counsel presented "argument to the court that the facts in the transcript d[id] not support a conviction . . . ." (*Id.* at pp. 1032–1033.) The court disagreed with the defendant's assertion that because the same argument had been made and rejected twice before in preliminary hearings, it was a forgone conclusion at trial. (*Id.* at p. 1032.) Recognizing that "if guilt is contested after submission on the transcript, the submission does not amount to a slow plea of guilty," the court in *Dakin* held that the submission was not a slow plea. (*Id.* at pp. 1031, 1033.)

We also find unpersuasive the People's argument that because Harris pled not guilty by reason of insanity and made arguments and put on evidence at the sanity phase of the trial, the submission on the transcripts at the guilt phase was not a slow plea. When a defendant pleads not guilty and also pleads not guilty by reason of insanity, as Harris did here, the court holds a bifurcated trial as to the issues of guilt and of sanity. (*People v. Hernandez* (2000) 22 Cal.4th 512, 520.) The defendant is first tried as to guilt. Then, if the trier of fact finds the defendant guilty, it must determine whether the defendant was sane or insane at the time he or she committed the offenses. (*Id.* at p. 520; Pen. Code, § 1026, subd. (a).) The issue in the sanity

9

phase is not whether the defendant is guilty of committing the charged acts, but whether or not the defendant should be punished for his or her actions because they were committed knowingly. (*Hernandez*, at p. 521.) Under California law, a defendant is not guilty by reason of insanity if at the time the offense was committed, the defendant was incapable of knowing or understanding the nature and quality of his act and of distinguishing right from wrong. (Pen. Code, § 25, subd. (b); *Hernandez*, at p. 520.) Thus, the defense's evidence and argument at the sanity phase of the bifurcated trial does not impact the outcome of the guilt phase, which is determined first. Here, the trial court found Harris guilty solely on the pretrial transcript and without any evidence or argument from defense counsel at trial, and then four months later found him sane.

In sum, based on the totality of the circumstances, we find that the submission of Harris's guilt on the basis of the pretrial transcript was a slow plea.

## III. The Record Does Not Establish That Harris Voluntarily and Intelligently Waived His Rights to Confront Witnesses and Against Self-incrimination

" 'It has long been recognized that under the federal Constitution a defendant's plea of guilty to a criminal charge is only valid if it is voluntarily and knowingly made.' " (*Wright*, *supra*, 43 Cal.3d at p. 491.) A slow plea is tantamount to a plea of guilty. (*Id.* at p. 492.) Therefore, the trial court must inform the defendant of his or her right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination, and the defendant must knowingly waive these rights. (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605 (*Bunnell*); *Wright*, at pp. 496–497.) This is also known as an advisal of constitutional

rights pursuant to *Boykin–Tahl*[2] to ensure the decision is voluntary and intelligent.  (*Wright*, at pp. 496–497; *Sanchez*, *supra*, 12 Cal.4th at pp. 28–29.)

If a trial court fails to instruct the defendant on the right to a jury trial, the error is per se reversible.  (*People v Holmes* (1960) 54 Cal.2d 442; *People v. Sivongxxay* (2017) 3 Cal.5th 151, 166.) In contrast, a failure to instruct on the right to confront and cross-examine witnesses, and against self-incrimination, does not compel automatic reversal when the record establishes that the submission on the prior evidence was voluntary and intelligent under the totality of the circumstances.  (*Mosby, supra,* 33 Cal.4th at p. 360; *People v. Calvert* (1993) 18 Cal.App.4th 1820, 1837, citing *People v. Howard* (1992) 1 Cal.4th 1132, 1175, abrogated on other grounds in *People v. Rhoades* (2019) 8 Cal.5th 393; see also Cal. Criminal Law:  Procedure and Practice (Cont.Ed.Bar 2022 ed.) § 28.21.)

The People do not claim that the trial court properly advised Harris of his right to confront and cross-examine witnesses and against self-incrimination.  Accordingly, the question before us is whether the record establishes that Harris voluntarily and knowingly waived these rights under the totality of the circumstances.  (*Mosby*, *supra,* 33 Cal.4th at p. 360.)  We find no such evidence.  There is no affirmative indication in the record that Harris knew of his right to confront and cross-

---

[2]     *Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122.

11

examine witnesses, or against self-incrimination.[3]  There is thus no evidence that his waiver of these rights when he consented to submit on the preliminary hearing transcripts was voluntary and intelligent.

In addition, when a defendant submits his case on the transcript, the record must also reflect that the defendant "understands the nature of the charges."  (*Bunnell, supra,* 13 Cal.3d at p. 605.)  The defendant must also be advised of the "direct consequences of conviction."  (*Ibid.*)  The record does not establish that Harris understood the nature of the charges.  Harris thought he faced only one charge of robbery, not five.  He believed that "Rio Hondo proved some out," and told the trial court that.  The trial court told Harris it would look into this issue.  But there is no indication that the trial court ever clarified this issue for Harris, as it told him it would.  The record also does not establish that Harris was directly advised of the consequences of conviction before he consented to submit on the transcript.  Moreover, the record suggests that Harris was surprised at the sentencing stage by the length of the sentence, as shown by him asking, "I wonder why I got so much time?"

For these reasons, the record does not establish that Harris's waiver of his rights by submitting on the preliminary hearing transcripts was intelligent and voluntary, so we must reverse.

---

[3]  We do not reach the question of whether Harris's jury trial waiver was valid because we hold that Harris's waiver of his rights to confront and cross-examine witnesses and against self-incrimination was invalid.

12

## DISPOSITION

The judgment is reversed on all counts.

VIRAMONTES, J.

We concur:

STRATTON, P. J.

WILEY, J.