Filed 1/30/15  P. v. White CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROBERT WHITE,<br><br>        Defendant and Appellant. | A139126<br><br>(Mendocino County<br>Super. Ct. No. SCUKCRCR1270765) |

Robert White was convicted of two counts of attempted robbery with use of a knife and one count of dissuading a witness.  He contends the court erred when it failed to suspend proceedings for a competency hearing.  White further asserts that his court trial was tantamount to a slow plea, so that the court was required to advise him and obtain waivers of his constitutional trial rights, that the imposition of consecutive terms for attempted robbery and dissuading a witness violated Penal Code section 654,[1] and that the court failed to understand and exercise its discretion to impose three 25-years-to-life sentences concurrently.  None of his contentions have merit.  We affirm the judgment.  Both parties correctly agree the abstract of judgment contains errors, so we also direct the trial court to prepare a corrected abstract that accurately reflects the judgment.

## BACKGROUND

Around 11:20 a.m. on December 20, 2012, Royleen Eriksen had finished her grocery shopping and was approaching her parked pickup truck when she heard someone

---

[1] Further statutory citations are to the Penal Code.

1

say "Look at this. It's a knife." She looked and saw White holding a knife an inch or two from her side. She screamed and ran around to the far side of her shopping basket. White yelled at her to give him her money. At that point Mrs. Eriksen's husband jumped out of the truck and started to make a call on his cell phone. White approached him with the knife in his hand and told him to hang up, then headed across the parking lot with Mr. Eriksen following him. After briefly losing sight of White, Mr. Eriksen spotted him in a Planet Smoothie shop. White left the shop, saw Mr. Eriksen and pulled the knife out of his pocket, saying "Do you want some of this?" Mr. Eriksen retreated across the street and White headed around the corner. Just then police arrived. Mr. Eriksen gave them White's description and pointed out the direction he had fled.

Patricia DeLapo was nearby that morning Christmas shopping. She was standing at the passenger side of her parked car when she heard a voice behind her say "Get in your car." She turned and saw White with a knife. He said "Lady, I have something here that can hurt you." DeLapo asked White why he wanted her to get in the car. He replied that he really just wanted money to get out of town. Just then, looking past DeLapo's shoulder, White said "Oh, shit, here comes the cops," and took off. DeLapo walked around the corner and saw White surrounded by police officers with his hands behind his back. A knife was found in his back pocket.

White was charged with the attempted robbery of DeLapo and Mrs. Eriksen (counts one and four) with special knife use allegations, assault of Mr. Eriksen with a deadly weapon (count two), dissuading a witness (Mr. Eriksen, count three) with a special knife use allegation, and inflicting pain or mental suffering on an elder with the use of a knife (DeLapo, count five). The information alleged four prior serious felony conviction enhancements under section 667, subdivision (a) and four prior strike convictions under sections 1170.12 and 667.

On the day set for trial White waived his right to a jury. The case was tried to the court the following day. The court found White guilty of the two attempted robberies and dissuading a witness, and found the knife use allegations true as to those counts. The

2

court also found true three of the section 667, subdivision (a) allegations and all four strike allegations. White was acquitted of counts two and five.

White was sentenced to a total term of 98 years to life in state prison.

## DISCUSSION

### I. The Court Was Not Required To Suspend the Trial For A Competency Hearing

White contends there was substantial evidence that he was not competent to stand trial, and therefore that the court deprived him of due process of law when it failed to suspend the proceedings and conduct a competency hearing. His assertion is meritless.

"Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the state from trying or convicting a criminal defendant while he or she is mentally incompetent. [Citations.] A defendant is incompetent to stand trial if he or she lacks ' "a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . a rational as well as a factual understanding of the proceedings against him." ' " (*People v. Rogers* (2006) 39 Cal.4th 826, 846–847.) Therefore, "[b]oth federal due process and state law require a trial judge to suspend trial proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial. [Citations.] The court's duty to conduct a competency hearing may arise at any time prior to judgment. [Citations.] Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations. [Citations.] But to be entitled to a competency hearing, " 'a defendant must exhibit more than . . . a preexisting psychiatric condition that has little bearing on the question . . . whether the defendant can assist his defense counsel.' " (*Id.* at p. 47; *People v. Ramos* (2004) 34 Cal.4th 494, 508; *People v. Welch* (1999) 20 Cal.4th 701, 738.) On appeal we apply a substantial evidence standard based on the record at the time the ruling was made. (*People v. Welch, supra,* 20 Cal.4th at p. 739; *People v. Laudermilk* (1967) 67 Cal.2d 272, 283, fn. 10.) The court's decision "whether or not to hold a competence

3

hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial. (*People v. Rogers, supra*, 39 Cal.4th at p. 847.)

White claims the following evidence raised a reasonable doubt about his competence. In October 1996, while incarcerated, he was transferred to Atascadero State Hospital pursuant to Penal Code section 2684.[2] In April 1997 he was paroled but retained at Atascadero for four additional months of treatment by the Department of Mental Health as a condition of his parole. White told his probation officer that in June 2012 he was released on parole "with prescription medication for his mental health issues." He entered a recovery program, but left after five months "once his medication ran out" and resumed his lifelong pattern of alcohol and polysubstance abuse. White "disclosed methamphetamine is his drug of choice and he was high at the time of the instant offense." He said he had been "up for nine days straight just prior to this offense and had been hallucinating and acting paranoid. He believed people were after him."

---

[2]Section 2684 provides: "(a) If, in the opinion of the Secretary of the Department of Corrections and Rehabilitation, the rehabilitation of any mentally ill, mentally deficient, or insane person confined in a state prison may be expedited by treatment at any one of the state hospitals under the jurisdiction of the State Department of State Hospitals or the State Department of Developmental Services, the Secretary of the Department of Corrections and Rehabilitation, with the approval of the Board of Parole Hearings for persons sentenced pursuant to subdivision (b) of Section 1168, shall certify that fact to the director of the appropriate department who shall evaluate the prisoner to determine if he or she would benefit from care and treatment in a state hospital. If the director of the appropriate department so determines, the superintendent of the hospital shall receive the prisoner and keep him or her until in the opinion of the superintendent the person has been treated to the extent that he or she will not benefit from further care and treatment in the state hospital.
(b) Whenever the Secretary of the Department of Corrections and Rehabilitation receives a recommendation from the court that a defendant convicted of a violation of Section 646.9 and sentenced to confinement in the state prison would benefit from treatment in a state hospital pursuant to subdivision (a), the secretary shall consider the recommendation. If appropriate, the secretary shall certify that the rehabilitation of the defendant may be expedited by treatment in a state hospital and subdivision (a) shall apply."

White was "previously diagnosed with Schizoaffective Bipolar Disorder and disclosed several suicide attempts in the past."

None of this indicates White was unable to understand the proceedings and assist his counsel *at the time of trial*, and there is no indication in the pretrial, trial and sentencing transcripts that White's behavior or demeanor in the courtroom cast doubt on his competence. There was no evidence that any past or current mental illness or substance abuse affected his ability to understand the trial process or assist his attorney. In contrast to the cases White cites, his self-reported suicide attempts were neither current nor accompanied by bizarre behavior, the testimony of a mental health professional regarding his competence, nor any other indication of incompetence to stand trial. (*Cf. People v. Pennington* (1967) 66 Cal.2d 508 [defendant interrupted trial with comments and curses, displayed his penis to courtroom spectators, was observed weeping in his jail cell with abrasions on his wrists, and a psychologist testified the defendant was not competent]; *Drope v. Missouri* (1975) 420 U.S. 162 [defendant with previous diagnoses of psychiatric problems tried to choke his wife the evening before trial and shot himself during the trial; pretrial psychiatric evaluation reported defendant had difficulty participating and relating and was "markedly circumstantial and irrelevant in his speech"]; *Pate v. Robinson* (1966) 383 U.S. 375 [childhood head injury followed by long history of severely disturbed and irrational behavior, testimony of four witnesses that defendant was insane].) Nor did defense counsel indicate at any time that White was having difficulty assisting in his defense or understanding the proceedings or charges against him.

After our review of the entire record, we are satisfied there was no evidence of incompetence that would have required the trial court to stop the trial and conduct a competence hearing.

## II. White's Trial Did Not Amount To A Slow Plea

White contends his court trial amounted to a slow plea because his attorney cross-examined only two of five prosecution witnesses, presented no defense evidence, and argued only that White was not guilty of three of the five counts. Therefore, he argues,

5

the trial court erred when it failed to advise him and obtain a waiver of his constitutional trial rights and to explain the consequences of a conviction. His contention fails with its premise that the court trial " 'amounted to a prima facie showing of guilt' " and was " 'equivalent of a plea of guilty.' "

When a defendant pleads guilty or admits the truth of a prior conviction, the court must obtain a knowing and intelligent waiver of the defendant's constitutional rights to a jury trial and to confront and cross-examine the witnesses against him, and his right to assert a privilege against self-incrimination. (*People v. Wright* (1987) 43 Cal.3d 487, 491-492; see *Boykin v. Alabama* (1969) 395 U.S. 238, 242 (*Boykin*); *In re Tahl* (1969) 1 Cal.3d 122, 132 (*Tahl*); *In re Yurko* (1974) 10 Cal.3d 857, 863–864.) When a prior conviction allegation is admitted, the court must also advise the defendant of the increased sentence that may be imposed due to the prior conviction. (*In re Yurko, supra*, at p. 864.) If the court fails to give required advisements and obtain the defendant's waiver of constitutional rights, the judgment must be reversed unless the record shows the plea was voluntarily and intelligently given under the totality of the circumstances. (*People v. Howard* (1992) 1 Cal.4th 1132, 1175.)

Our Supreme Court extended these constitutional requirements to cases in which a defendant enters a "slow plea," or submits on the transcript of the preliminary hearing and the submission is "tantamount to a plea of guilty." (*In re Mosley* (1970) 1 Cal.3d 913, 924–926; *People v. Levey* (1973) 8 Cal.3d 648, 654; *Bunnell v. Superior Court* (1975) 13 Cal.3d 592; see also *People v. Robertson* (1989) 48 Cal.3d 18, 39; *People v. Wright, supra*, 43 Cal.3d at p. 492.) "Under the rule of [*Boykin*] and [*Tahl*], as extended in [*Bunnell*] and other cases, 'when the defendant agrees to a submission procedure, such as a guilty plea or a submission on the preliminary hearing transcript, by virtue of which he surrenders one or more of the three specified rights . . . ' [citation], the record must reflect that he was advised of and personally waived the applicable right or rights. [Citation.] When the submission is a guilty plea or 'tantamount to a plea of guilty' [citation] the *Boykin-Tahl* requirements are constitutionally compelled." (*People v. Robertson, supra*, at p. 39.)

6

White's court trial was not the equivalent of a "slow plea." "A 'slow plea' has been defined as follows: 'It is an agreed-upon disposition of a criminal case via any one of a number of contrived procedures which does not require the defendant to admit guilt but results in a finding of guilt on an anticipated charge and, usually, for a promised punishment.' [Citation.] 'Perhaps the clearest example of a slow plea is a bargained-for submission on the transcript of a preliminary hearing in which the only evidence is the victim's credible testimony, and the defendant does not testify and counsel presents no evidence or argument on defendant's behalf . . . . [¶] Submissions that are not considered slow pleas include those in which . . . the facts revealed at the preliminary examination are essentially undisputed but counsel makes an argument to the court as to the legal significance to be accorded them. [Citation.]' [Citation.] 'If it appears on the whole that the defendant advanced a substantial defense, the submission cannot be considered to be tantamount to a plea of guilty.' " (*People v. Stone* (1994) 27 Cal.App.4th 276, 282; *People v. Wright, supra*, 43 Cal.3d at pp. 496–497.) Whether a proceeding qualifies even as a "submission," of which a slow plea is a subset, depends on whether the defendant's waiver of rights was by virtue of an agreement to proceeding on agreed evidence. (*People v. Robertson, supra*, 48 Cal.3d at p. 39.)

Here, White agreed to, and proceeded with, a court trial. He did not agree to submit the truth of the allegations on agreed evidence, and his waiver of a jury was not a consequence of any such agreement. There was no negotiated punishment. While defense counsel did not cross-examine three of the five prosecution witnesses, he did cross-examine two of them and retained the right to conduct further cross-examination. White did not elect to present evidence in his defense, but he retained the right to do so. "[A] decision not to exercise a right is not the same as a waiver of that right." (*People v. Marella* (1990) 225 Cal.App.3d 381, 387 [waiver of jury trial on prior prison term allegation was not a "submission" even though only evidence was certified prison records and defendant submitted without argument].) Moreover, White's attorney successfully argued that there was insufficient evidence to convict White of elder abuse or assaulting Mr. Eriksen with a deadly weapon and, albeit unsuccessfully, that the prosecution failed

to prove witness intimidation. As in *Marella*, "[u]nder the circumstances, [White] did not 'incriminate himself by an "involuntary confession of guilt" ' or 'surrender the right to confront and cross-examine the witnesses against him' by agreeing to a court rather than a jury trial." (*Ibid*., fn. omitted.)

White argues the court trial was tantamount to a guilty plea because his counsel presented no defense to the attempted robbery charges and only minimal argument against the witness intimidation count. Not so. The fact that defense counsel focused on the counts supported by the weakest evidence and chose not to challenge the overwhelmingly strong evidence on the attempted robbery counts, which included both victims' eyewitness testimony, did not transform the trial into a slow plea. " 'If it appears on the whole that the defendant advanced a substantial defense, the submission cannot be considered to be tantamount to a plea of guilty. Sometimes, a defendant's best defense is weak. He may make a tactical decision to concede guilt as to one or more of several counts as part of an overall defense strategy. A submission under these circumstances is not a slow plea, and the trial court is not constitutionally compelled by *Boykin* and *Tahl* to administer the guilty-plea safeguards to assure that the tactical decision is voluntary and intelligent.' " (*People v. Sanchez* (1995) 12 Cal.4th 1, 28–29, quoting *People v. Wright, supra*, 43 Cal.3d at pp. 496–497, italics omitted.)

*People v. Tran* (1984) 152 Cal.App.3d 680 (*Tran*), which White argues supports reversal, is inapposite. The defendants there were charged with attempted robbery, assault with a deadly weapon, and related offenses and enhancements. The jury was sworn and the victim "related a confusing, disjointed" recitation of the crime through an interpreter. Then, before any cross-examination, the defendants and their attorneys waived a jury, stipulated that disturbing the peace and brandishing a firearm were lesser included offenses, and submitted. The prosecution accepted the stipulations and rested. Defense counsel neither cross-examined the victim nor presented evidence. The court immediately found the defendants guilty of the stipulated lesser included offenses, acquitted them of all other charges, and sentenced them to 60-day jail terms with credit for 60 days time served. (*Id*. at pp. 682–683.)

In *Tran*, the Court of Appeal found the procedure amounted to a slow plea. Only the victim testified, and after the prosecution's case faltered with his direct examination there was no cross-examination, no defense, and no argument by either side. Moreover, as the court observed, "the prosecution does not stipulate disturbing the peace is a lesser included offense of robbery in actual trials in our experience. Nor are 60-day 'time served' sentences recommended by prosecutors or accepted by judges in robbery cases with guns in the real world of real trials." (*Tran, supra*, 152 Cal.App.3d at p. 683.) This, then, was a not a "real trial[]", but rather a "legal charade with defense counsel and the prosecutor as principal actors." (*Id.* at pp. 683, 684.) The same cannot be said here.

## III. The Court Properly Imposed Consecutive Terms for Counts One and Three

White argues the court violated section 654 when it sentenced him to consecutive 25-year terms for counts one and three, the attempted robbery of Mrs. Eriksen and intimidating a witness as to Mr. Eriksen. This is so, he contends, because the two offenses were incidental to the same objective of robbing Mrs. Eriksen and avoiding arrest for the crime. He is mistaken.

Pursuant to section 654, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) "Section 654 prohibits punishment for two crimes arising from a single indivisible course of conduct. [Citation.] If all of the crimes were merely incidental to, or were the means of accomplishing or facilitating one objective, a defendant may be punished only once. [Citation.] If, however, a defendant had several independent criminal objectives, he may be punished for each crime committed in pursuit of each objective, even though the crimes shared common acts or were parts of an otherwise indivisible course of conduct. [Citation.] The defendant's intent and objective are factual questions for the trial court, and we will uphold its ruling on these matters if it is supported by substantial evidence." (*People v. Perry* (2007) 154 Cal.App.4th 1521, 1525.) We review the evidence in the light most

9

favorable to the People and presume in support of the judgment the existence of every fact the trier could reasonably deduce from it. (*People v. McGuire* (1993) 14 Cal.App.4th 687, 698.)

The fatal weakness in White's argument lies in the "multiple victim" exception to section 654. " 'Under this exception, "even though a defendant entertains but a single principal objective during an indivisible course of conduct, he may be convicted and punished for each crime of violence committed against a different victim." [Citations.] The reason for the multiple victim exception is that "when a defendant '"commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons," his greater culpability precludes application of section 654.' " (*People v. Centers* (1999) 73 Cal.App.4th 84, 99.) Accordingly, section 654 does not preclude separate punishment for White's attempted robbery of Mrs. Eriksen and his ensuing attempt to prevent her husband from thwarting his escape.

White argues the multiple victim exception does not apply because a conviction for witness intimidation under section 136.1, subdivision (b)(3) is not a crime "of violence."[3] That may be so in some circumstances, but here the court found that White used a knife in committing the offense against Mr. Eriksen. White can hardly argue, at least with any modicum of credibility, that his attempt to prevent Mr. Eriksen from summoning help by threatening him with a knife was not a violent offense for purposes of the multiple victim exception. (See *People v. Centers*, *supra*, 73 Cal.App.4th at p. 99 [any crime involving the use or display of a firearm is deemed violent for multiple victim exception to § 654].) The imposition of consecutive sentences on counts one and three was not error.

_____

[3]Section 136.1, subdivision (b)(3) provides that "Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: . . . . (3) Arresting or causing or seeking the arrest of any person in connection with that victimization." In contrast, Section 136.1, subdivision (c)(1) makes the same act a felony "Where the act is accompanied by force or by an express or implied threat of force or violence. . . ."

## IV.  The Court Properly Imposed Consecutive Terms Under Section 1170.12

At sentencing, the trial court first explained its imposition of consecutive terms on the knife use enhancements as follows: "[F]irst, I think certainly the Court could stay one or more of the knife enhancements if it chose to do that.  But—and they could probably also be run concurrent to each other, the knife enhancements alone.  But the knife was used on the first victim in the parking lot by Lucky's.  The second use of the knife was on a different victim, although he was the husband of the first victim.  It was in a different location.  It was out on, you know, essentially Orchard.  And Mr. White came out of a place of business to threaten that gentleman with a knife. [¶] And then the incident with Mrs. DeLapo is a completely different victim.  And although the motivation may be robbery, it could have been wanting to take her vehicle as well.  Hard to say.  But in the usual sense where you decide to run things concurrent or consecutive, I would run those consecutive."

The court further commented that while it might have the authority to impose and stay some of the special allegations of prison priors, it would not do so in this case.   "It's a significant course of conduct that we have these three—essentially, three separate strikes in the course of this day with enhancements.  And the defendant's prior record, which is the reason for the fourth, fifth, sixth and seventh special allegations, merits the imposition of those prior prison terms."  Then, turning to the felony counts, the court continued:  "The 25-to-life terms are mandatory.  My reading of [section] 1170.12 is that the Court shall run the consecutive 25-to-life sentences concurrent—I mean consecutive.  *But even if I have discretion to run them concurrent for the same reason that I articulated with the knife, you know it's three separate victims, it's three separate people who were subjected to, you know, essentially, fear for their lives, and I don't think I would if I could*." (Italics added.)

White contends the court's belief that it was required to impose consecutive 25-years-to-life terms was erroneous because section 1170.12 mandates consecutive sentencing only when multiple felonies are not committed on the "same occasion" and do not arise from the same operative facts.  White says the attempted robberies and witness

11

dissuasion were committed on the "same occasion" for purposes of section 1170.12, so the court possessed, but failed to understand and exercise, the discretion to sentence concurrently. The contention is meritless. Leaving aside that White forfeited this largely factual claim by failing to raise it at sentencing (see *People v. Scott* (1994) 9 Cal.4th 331, 353–354), the trial court clearly explained its view that these were different offenses against different victims, and that it would have imposed consecutive terms even if it had the authority to sentence White concurrently. "If the record shows that the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required." (*People v. Sanders* (1997) 52 Cal.App.4th 175, 178, disapproved on other grounds in *People v. Fuhrman* (1997) 16 Cal.4th 930, 947 fn. 11; *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896.) Such is the case here.

## IV. The Abstract of Judgment Must Be Corrected

Both parties agree, correctly, that the abstract of judgment contains errors and must be corrected to accurately reflect the judgment imposed by the court. Specifically, the abstract fails to reflect that the trial court imposed one five-year term for each of White's four section 667, subdivision (a) special allegations, for a total of four five-year terms. Instead, the abstract shows three five-year terms and one six-year, one-month term. In addition, the abstract erroneously indicates White was sentenced to life with the possibility of parole on counts one, three and four. The abstract must be corrected to reflect the oral pronouncement of the court at sentencing. (See *People v. Jones* (1999) 75 Cal.App.4th 616, 635.)

## DISPOSITION

The trial court is directed to prepare a corrected abstract of judgment reflecting the judgment orally imposed by the court and to forward a certified copy of the corrected abstract to the Department of Corrections. The judgment is affirmed.

                                                     _____

                                                     Siggins, J.

We concur:

_____

Pollak, Acting P.J.

_____

Jenkins, J.

*People v. White*, A139126